## Eberly's Appeal.

1. It seems that the Act of April 18th, 1853, (P. L., 503), prohibiting the accumulation of income beyond the minority of the person entitled, applies to "spendthrift trusts."

2. This Act will take effect although there be no express direction to accumulate, when a will disposes of an estate in such a manner that an excess, above what is reasonably required to carry out the trust, necessarily accumulates.

3. Whether or not such excess is an accumulation, within the prohibition of the Act of April 18th, 1853, depends upon the nature of the trust property and the duties of the trustee.

4. A testator devised and bequeathed his residuary estate, including certain realty, to a trustee in trust to manage the same, and out of the income to make repairs, pay an annuity, and to maintain and educate his son during minority. Upon the son's reaching majority the trustee was to pay him $500, and the like sum annually until the son was twenty-five, when the corpus was to be paid to him if the trustee thought fit, but if not, was to continue to be held in trust. At the date of the son's majority the accumulated income amounted to about $5,000, which he claimed should be paid over to him.
   *Held*, that said sum did not exceed a reasonable contingent fund which the trustee might require in the administration of the trust, and that therefore it was not accumulation within the prohibition of the statute, and neither the son nor his creditors were entitled to receive the same.

May 6th, 1885. Before MERCUR, C. J., PAXSON, STERRETT, GREEN and CLARK, JJ. GORDON and TRUNKEY, JJ., absent.

APPEAL from the Orphans' Court of *Cumberland county:* Of January Term 1885, No. 298.

This was a petition filed by John R. Albright against Samuel Eberly, trustee under the will of Samuel Albright, deceased, praying that certain accumulations of income be paid to him by the said trustee.

The defendant filed an answer and the matter was referred to an Auditor (William Trickett, Esq.,) who found the facts to be substantially as follows:

Samuel Albright died in April, 1869, leaving a will which was duly probated. After bequeathing to his mother $50 annually or such larger sum as should be necessary for her comfortable support during life, and devising to his widow the "homestead," the testator directed as follows:

"6. All the residue of my real and personal property, I give devise and bequeath unto my friend Samuel Eberly, Esq., of Hampden township, in trust to make such investment and manage the same, as he would his own property, and out of the same to pay the annuity allowed my mother; to keep up the repairs of my homestead, to provide for the maintenance and education of my son, John R. Albright, during his minority, which shall be under the direction and control of said Samuel Eberly, and upon my son's arriving at twenty-one years of age, to pay him the sum of $500, and a like sum annually until he arrives at the age of twenty-five years. Upon the arrival of my son at the full age of twenty-five years, if, in the judgment of my trustee or upon due proof and order of the Orphans' Court of Cumberland county, it shall appear that he is a sober and well-doing man, competent to take care and manage his estate, then I direct my trustee to convey my said real estate to my said son, John R. Albright, in fee simple and turn over to him the personal estate remaining in his hands, the release of my son being an ample and full discharge of said trustee. But, if such should not be the case and my son is not a fit person to take charge of the estate, then I direct that he shall receive annually the sum of $500 during life, and, at his death, all my estate real and personal in the hands of my trustee aforesaid, I give and devise the same to the heirs of said John R. Albright in equal shares and in fee simple forever."

The widow of the testator elected to take and receive the share of her husband's estate allowed to her by the intestate law. Though she is still alive, she is not interested in the fund in the hands of the trustee, the disposition of which is now in controversy. The mother of the testator, having received the annuity provided for her, has died. John R. Albright, the son and the only issue of the testator, attained his majority on the 6th day of June, 1882, and on June 24th, 1884, he presented his petition to the Orphans' Court reciting the above clause of the will and stating that there was an accumulation of income in the hands of the trustee amounting to about $6,000, and praying that this accumulation be paid over to him. The evidence seemed to show that John R. Albright

was not a fit person to take charge of his estate. The whole estate, which consisted chiefly of realty, was valued at $29,495.38, of which $20,912 was affected by the trust.

The Auditor reported that the sum of $5,059.56 was accumulated income in the hands of the trustee, that it had been attached by various creditors, that John R. Albright was of age, and recommended that it be paid to him or his creditors, on the ground that said accumulations of income belonged to the *cestui que trust* on his coming of age, under the Act of 1853.

The exceptions filed to this report by the trustee were dismissed by the court, the report was confirmed, and a decree was entered in accordance therewith. This appeal was then taken by the trustee, assigning for error this action of the court.

*A. B. Sharpe* (*C. P. Humrich* with him), for appellant, argued—1st. That there is nothing in the letter or spirit of the Act of the 18th April, 1853, that will strike down this trust, which belongs to a class that has been sustained in every case that has reached this court, prior to and since its date. 2d. The character of the trust is such that accumulation, in the sense in which the word is used in the Act, and in the adjudged cases thereunder, is not incident thereto; and 3d, That the discretionary power vested by the will of the testator in the executor, is such as in any event to absolve the fund from the provisions of the legislative enactment.

*William Trickett* (*J. W. Wetzel* and *S. Hepburn, Jr.* with him), for appellee.—The Act of April 18th, 1853, forbids the accumulation of income as here provided: Washington's Estate, 25 P. F. S., 102; Stille's Appeal, 4 W. N. C., 42; McKee's Appeal, 15 Norris, 277; Carson's Appeal, 3 Out., 325.

Mr. Justice STERRETT delivered the opinion of the court, October 5th, 1885.

It is unnecessary to consider the broad question which has been so ably discussed by the learned counsel for appellant, viz: Whether the 9th section of the Act of April 18th, 1853, Purd. 1245, pl. 9, was intended in any way to affect what are sometimes classed as "spendthrift trusts." The language of the Act is very comprehensive, and while it is perhaps to be regretted that it is so sweeping in its terms, we are constrained to adhere to the construction that has heretofore been given to it in Washington's Estate, 25 P. F. S., 102; Stille's Appeal, 4 W. N. C., 42; McKee's Appeal, 15 Norris, 277; Carson's Appeal, 3 Out., 325, and other cases. In Washington's Estate, 8 Phila., 182, our brother PAXSON said, "It is difficult

14 OUTERBRIDGE—7

[Eberly's Appeal.]

to see the wisdom of any Act which requires, in a large estate, the accumulated income of a minor to be paid to him upon his arrival at full age. There are many instances where such a thing would be injurious to him in the highest degree:" and in Carson's Appeal, *supra*, our brother TRUNKEY referring to the language above quoted remarks: " Time enough has elapsed for legislative correction, if the intendment of the statute has been misapprehended by the courts. . . . . . We are not convinced that the repeated and uniform decisions upon the very question now presented should be overruled. *Stare decisis.*"

The former rule against perpetuities applied to *income* as well as *corpus*. As to the latter, the Act of 1853 makes no change; but with respect to the former, it introduced a more stringent rule and declares that a direction to accumulate, longer than the time specified therein, shall be void, &c. The proviso to the section specifically exempts from its operation every "donation, bequest or devise for any literary, scientific, charitable or religious purpose." All others are embraced whenever they offend against its provisions in regard to accumulations. It is not essential that the direction to accumulate should be express. If the estate is disposed of so or in such manner that accumulations, clearly beyond what may be reasonably required to fully and effectually carry out the provisions of the trust, must necessarily exist, it amounts to an implied direction to accumulate. But, in determining whether the excess of income over and above disbursements and expenses, at any given time, is an accumulation within the prohibition of the statute or not, regard must be had to the trust property and the duties imposed on the trustee. If, as in this case, the trust is an active and continuing one, involving principally the management of real estate, keeping the same in repair, etc., as the trustee " would his own property," and paying out of the proceeds thereof an annuity and other fixed charges as well as uncertain and contingent outlays and expenses, care must be taken not to strip the trustee of a contingent fund upon which he may be required to draw to meet the exigencies of the trust. In this case the so called accumulations upon which the improvident *cestui que trust* is so anxious to lay his hands, amount to about $5,000, a sum that, for aught we know, would not be more than sufficient to replace the buildings on the farm in case they should be destroyed. The failure or destruction of crops, even for a single year, might so lessen the income as to necessitate the use of part of the balance on hand to pay the annuity and meet other pressing demands on the trustee. The corpus of the trust is unlike that composed of cash or good interest-bearing securi-

ties, yielding a comparatively certain and uniform income. In McKee's Appeal, *supra*, no question arose, nor could any possibly arise, in regard to the admitted accumulation. There was no contingency in which it could be required for the purposes of the trust other than to swell the already large accumulated balance, which the testator did not appear to have anticipated or provided for.

In the case before us, the testator appears to have foreboded the thriftless and improvident character of his only son, and that doubtless prompted him to create the trust found in his will. After making minor dispositions of part of his property, he gave all the rest, residue and remainder, real and personal, to appellant "in trust to make such investment and manage the same as he would his own property, and out of the same to pay the annuity allowed my mother; to keep up the repairs of my homestead, to provide for the maintenance and education of my son John R. Albright during his minority, . . . . . and upon my son's arriving at twenty-one years of age to pay him the sum of $500 and a like sum annually until he arrives at the age of twenty-five years. Upon the arrival of my son at the full age of twenty-five years, if in the judgment of my trustee or upon due proof and order of the Orphans' Court of Cumberland county it shall appear that he is a sober and well doing man, competent to take care and manage his estate, then I direct my trustee to convey my real estate to my said son John R. Albright in fee simple, and turn over to him the personal estate remaining in his hands." When the time comes for the court to pass upon the question, it is not likely, in view of the evidence before us, that they will feel warranted in adjudging appellee a fit person to take charge of his estate. If he is not, the testator directs that he shall receive annually $500 during life, and at his death all the real and personal estate in the hands of the trustee is given and devised by testator to the heirs of his son in equal shares.

We think the Orphans' Court erred in deciding that the fund in the hands of the appellant is accumulated income within the prohibition of the statute.

> Decree reversed and petition dismissed and it is ordered that the appellee pay the costs, including costs of the appeal.