## Sternberger's Estate

Before Lamorelle, P. J., and Gest, Henderson, Stearne, and Sinkler, JJ. Lamorelle, P. J., and Gest, J., dissent.

*J. Warren Brock* and *Leon J. Obermayer,* for exceptants.

*Bevan A. Pennypacker* and *Clement B. Wood,* contra.

STEARNE, J., November 2, 1934.—A majority of the court are of opinion that the exceptions should be dismissed. As we view this situation, no distribution of income should be permitted while the trust estate is presently and actually indebted for taxes and other real estate carrying charges, in excess of the items of income disbursement claimed. More especially is this true where, according to the record, the life tenants who demand the income distribution are nevertheless desirous of still retaining the real estate, the continued hold-ing of which is the cause of the existing deficit. Furthermore, the quiesence of the life tenants from 1920 to 1932 contributed to the delay in ascertaining that the income items in question had been improperly allocated. It would appear to us that the broad equitable rule of Pennsylvania as to the appor-tionment of dividends and profits between life tenants and remaindermen, enunciated in Nirdlinger's Estate, 290 Pa. 457, and in numerous cases there-after, has peculiar application to the present case. The Supreme Court has always been careful to see to it that life tenants shall receive their proper due, but it is equally mindful that at all times the corpus or intact value shall be preserved. The basic legal reasoning, although at times difficult of applica-tion, nevertheless is obviously sound and just. It prevents accumulations or accretions at the expense of life tenants to the advantage of the remainder-men, but at the same time insures against depletion or erosion of the capital which produces the income. By analogy, the same rule and reasoning should be applied to this case.

Decedent died, testate, in 1918. His will created certain annuities and life estates with remainders over. His estate was duly administered and the assets awarded, in 1920, to trustees for the purposes of the will. No account was filed by the trustees until 1932—a period of over 12 years. One of the assets of the estate consists of a piece of central city real estate. By reason of present busi-ness conditions, it has proven quite expensive to carry this real estate, but because of its potential intrinsic value none of the parties in interest is desirous at this time of selling or abandoning the same. Upon the audit of the account of the trustees, it was developed that items of permanent improvements to real estate totaling $15,807.65, from 1920 to 1932, in various years and in sundry amounts, had been improperly charged against income, instead of prin-cipal. Had such items been properly and currently allocated to principal, in each and every year, the life tenants would have from time to time received

such sums over the said period of 12 years. It is also to be observed that, while the life tenants did not so receive such income, neither did they take any legal steps during such period to require an accounting. When the balance of the income account was ascertained by the auditing judge, it appeared that there is on hand $21,783.53 (including the aforesaid sum of $15,807.65) but that there remain unpaid taxes for the year 1932 (already due and delinquent) in the amount of $23,060.25. In other words, if the sum of $15,807.65 is distributed, as the life tenants demand, there will be a deficit of several thousand dollars for current and overdue taxes. If this indebtedness is not paid, the real estate will probably be lost through a tax sale or mortgage foreclosure.

As we view the matter, the testator bequeathed "net income". This means gross income after deduction of expenses. It may be deplored that the life tenants did not receive all their income when and as entitled. However, they themselves contributed to this legal difficulty in not being vigilant and in neglecting to require a prompt accounting. The life tenants desire the income but are not willing either to pay the current expenses of carrying charges on the real estate or to agree that the real estate be sold or abandoned. Even if it were possible to mortgage this real estate—which at the present time is neither practicable nor possible—the principal should not be used where there is income on hand available to defray current taxes. It may well be that when, as, and if there is income to distribute, certain of the annuitants or life tenants, in equity, may be entitled to receive a preferential payment to the extent of the income in question, but this is not now before the court.

We do not regard the decision in Sinnott's Estate, 310 Pa. 463, as controlling the present facts. There and in kindred cases permission was granted to establish a reserve for contingencies out of "current surplus income". The vice in the exceptants' contention, in our opinion, would be to pay out income where there exists actual and subsisting indebtedness largely in excess of such amount, and which will create an actual income deficit. To so distribute would have the effect of probably destroying the very trust res upon which the life tenants are receiving their present income.

The exceptions to the schedule of distribution are dismissed, and the schedule is approved.

SINKLER, J., concurring.—Occasionally, fortunately rarely, a case arises in which two routes may be followed, both equally correct, but leading to different destinations. Such is the present case. My first conclusion upon the matters in controversy was that the only question involved was the ownership of a fund arising from the fact that certain expenditures had originally been charged against income and by subsequent agreement were to be charged against principal. Upon exceptions to my finding, argument was had before the court in banc. By reason of statements then made by counsel, the matter was referred back to me to take further testimony, particularly as to arrears of taxes and other charges for the payment of which no income was apparently available. Upon consideration of the additional evidence produced before me, I concluded that the facts were not such as to justify the interference by this court with the plan of administration adopted by the accountants. While the argument advanced in favor of the conclusions reached by the majority of the court may not greatly outweigh those reached by the minority, the conclusions of the majority will effect the advantageous administration of the trust estate, and I therefore concur with the majority of the court.

GEST, J., dissenting.—The testator died in 1918, leaving a will, by which he bequeathed certain annuities and the residue of the total annual net income to certain life tenants. The trust is to continue until the death of the survivor

of the life tenants, and the testator expressly stated that it was his intention to provide for distribution of the whole income of the estate until arrival of the period for the final distribution.

No account was filed by the trustees from 1920 until the present account was filed in 1932, and we may observe that in this case, as in many similar cases, much confusion and litigation might have been avoided had the trustees availed themselves of their statutory privilege of filing accounts more frequently.

During the period embraced by this account, the trustees charged against income numerous payments which should have been charged to principal, and it was stipulated by the parties that $15,807.65 should be transferred from income account to principal account. As a result, the income account showed an undistributed balance which included said sum, being improper credits in various amounts charged during the years 1920 to 1932. The auditing judge, in the schedule of distribution approved by him, reserved the income balance of $21,154.34, which included, as above stated, the amount of $15,807.65 so transferred, in order to provide a reserve fund, against the deficit in income for 1932 and future maintenance charges on the real estate. The life tenants in their exceptions claim that this was error, on the ground that this reservation is not authorized by the will nor justified by the decisions of the Supreme Court.

So far as the will is concerned, this position is clearly well taken. Indeed, the testator expressly contemplated and intended that the beneficiaries under his will should receive the net income remaining from year to year after the payment of the annuities, and so directed in several clauses of paragraph 9 of the will. The trustees, according to the will, should have distributed the net income as it accrued from the year 1920 and thereafter to the beneficiaries, whose income under the will was therefore improperly withheld.

The auditing judge, however, held that the corpus of the trust estate is in considerable danger by reason of unpaid taxes and other charges, and that the retention of the fund in question and its application to the payment of these taxes and charges rested within the exercise of his discretion as auditing judge. Sinnott's Estate, 310 Pa. 463, was relied upon as supporting this view, and our decision upon the present exceptions depends to a great extent upon the scope and authority of that case.

The will in Sinnott's Estate directed monthly payment of income to the beneficiaries according to certain powers vested in the trustees, and forbade the accumulation of income. The principal of the estate, according to the adjudication, amounted to $1,500,000, and the balance of current income was $16,844.62, which the court authorized the trustees to withhold in aid of the judicious management of the trust, saying: "In view of the size of this estate, the income therefrom, and the economic situation as it has existed for the past three years, we do not now look upon the accumulation of income complained of by the appellant as an unreasonable exercise of their power. If they later manifest an intention to maintain permanent accumulations of income beyond the apparent necessities of the situation, the charge of an abuse of discretion may prove to be well founded."

Sinnott's Estate followed the prior cases of Eberly's Appeal, 110 Pa. 95, and Howell's Estate, 180 Pa. 515. In Eberly's Appeal, about $5,000 of income had accumulated in the hands of the trustee, who was authorized to retain it in order to assure the regular payment of an amount bequeathed by the testator to his improvident son. Howell's Estate was somewhat similar, as the protection of an annuity was in question and the surplus income reserved as "a wise provision to meet deficiencies during the life of the widow." We applied these cases in Dunn's Estate, 26 Dist. R. 656. Sinnott's Estate perhaps went some-

what further, but in our opinion it is clearly distinguishable from the present case in this important respect—in Sinnott's Estate there was the establishment of a reserve for contingenies out of current surplus income, while here the fund reserved consists, at least to a large extent, of income which should have been distributed to the life tenants in years gone by, which rightly belonged and still belongs to them. It cannot be regarded as "surplus income".

The fact that the life tenants did not take legal proceedings to enforce the payment of the money due to them under the plain provisions of the will does not operate as a waiver of their rights. The responsibility for proper administration of the estate rested upon the trustees, and it was their duty to pay over the income to the persons entitled to it. The trustees might have filed an account as soon as any question arose concerning distribution.

In my opinion, the exceptions should be sustained, and the account and the schedule of distribution should be recommitted to the auditing judge for amendment of the schedule and further proceedings in accordance with the views herein expressed.

Lamorelle, P. J., concurs in this dissenting opinion.