### GUNCKEL v GUNCKEL et

Probate Court, Montgomery Co

Decided August 10, 1939

J. B. Coolidge, Dayton, and Charles R. Enos, Denver, Colorado, for guardian ad litem for Caroline Lowe and John G. Lowe, minors.

Richard M. Mote, Dayton, and Richard L. Brown, New York, N. Y., for Guaranty Trust Co. of New York, executor of estate of John G. Lowe.

## OPINION

By WISEMAN, J.

This is an action to construe the last will and testament of Caroline H. Lowe, deceased. The particular portion of the will which requires construction is as follows:

Item 5:
"All the balance of my estate, real, personal or mixed, I hereby will, devise and bequeath to my sons, Charles H. Lowe and John Lowe, in trust, for the following purposes:

"My said trustees shall take possession of all of said balance of my estate and after paying the necessary expenses of said trust, shall first out of the proceeds of same, give to my sister, Emma H. Jackson, the sum of Five Hundred Dollars ($500.00) per year, for and during her natural life, at such times and in such installments as will be most convenient to them as such trustees of my said estate. My said trustees are hereby authorized and em-

powered to sell any real estate or personal property which constitutes said balance of my said estate; to sell any of said property coming into their hands as such trustees, to any person for any price at any time, which to them, may seem to be for the best interest of my said estate, and to reinvest the proceeds of said sale, or sales either in stocks, bonds, mortgages or other personal securities as to them may seem for the best interest of my said estate.

"And I further direct that my said trustee be not required to give bond as such.

"Upon the death of my said sister, Emma H. Jackson, I hereby will, devise and bequeath all the balance of said trust estate remaining in the hands my said trustees or their successors in said trust, to my children equally, living at the time of the death of my said sister, Emma H. Jackson, but if any of my said children shall die before my decease or before the decease of my said sister, Emma H. Jackson, leaving no children surviving, then I will and direct that the share which my said child would have taken if living, shall pass to and vest in my children surviving, and in case any of my said children shall die before my decease or before the decease of my said sister, Emma H. Jackson leaving child or children surviving, then I will and direct that the child or children surviving the parent, shall take the share which the parent would have taken if said parent had survived me and had survived my said sister, Emma H. Jackson."

The testatrix died April 27, 1917, leaving a husband surviving her, and five children: Charles H. Lowe, Ella Lowe Gunckel, John G. Lowe, Elizabeth Lowe Hill Smith and Henrietta Lowe Patterson, all adults and also her sister, Emma H. Jackson. Her son Charles H. Lowe died February 27, 1920, without children, and her son John G. Lowe died August 24, 1937, leaving two children surviving him: Caroline Lowe and John G. Lowe Jr.; both minors. Her

sister, Emma H. Jackson died March 26, 1938.

At the time of the execution of her will, to-wit, January 24, 1912, the entire estate of the testatrix consisted of a residence property valued at $14,000; 140 shares of common stock of the Lowe Brothers Company, a paint manufacturing concern; and 10 shares of the capital stock of the Fourth National Bank of Dayton, Ohio The stock of the Lowe Brothers Company at that time was valued at $60,000, and the bank stock was valued at $1500. Subsequent to the date of the execution of the will, by reason of a stock dividend being declared by the Lowe Brothers Company, her holding in said company was increased to 395 shares. The residuary portion of her estate, which passed under Item 5 of her will, consisted of 395 shares of the common stock in the Lowe Brothers Company and 10 shares of the capital stock of the Fourth National Bank, valued at $65,451.50 and $1500 respectively, at the time of her death.

The annual dividends on the Lowe Brothers stock which was held by the testatrix, gradually increased from 1912 until the date of her death, as follows:

| | |
|------|-----------|
| 1912 | $1,680.00 |
| 1913 | 1 960.00 |
| 1914 | 1.960.00 |
| 1915 | 1.960.00 |
| 1916 | 2,370.00 |
| 1917 | 2,370.00 |

From 1912 to 1917 inclusive, the dividend payment on the 10 shares of the Fourth National Bank stock amounted to $60 per year.

The trust estate was established April 2, 1918, from which date the excess income of the trust estate over and above the expenses of the trust and the payment of $500 annually to her sister, Emma H. Jackson, until the date of her sister's death. March 26, 1938, amounted to $347,862.51. The excess annual income increased from $2530 in 1919 to $20,730 in 1924, and thereafter averaged approximately $20,000 per

year, with the exception of the year 1929 when it amounted to $61,170. The total excess income over and above the expenses of the trust and the payments to Emma H. Jackson, is represented by $16,579.76 of undistributed cash income now in the possession of the trustee, $112,872.75 of invested income, and $218,410.00 which was distributed to four remaindermen: Ella Lowe Gunckel, Elizabeth Lowe Hill Smith, Henrietta Lowe Patterson and John G. Lowe, under an agreement entered into April 1, 1927, by and between said four remaindermen and Ella Lowe Gunckel as trustee under the will of Caroline H. Lowe, whereby the said remaindermen, in consideration of the payment by the trustee to them of the excess income during the lifetime of the said Emma H. Jackson, agreed to indemnify the said trustee from any and all loss which the said trustee or her successor may sustain by reason of any distribution of said excess income. The son Charles H Lowe did not participate in the distribution of the excess income, his death having occurred prior to the execution of said agreement. In pursuance of said agreement, there was distributed to each of the four remaindermen the sum of $54,602.50, the last distribution having been made June 4, 1937.

The principal question for the court to determine is whether the remaindermen were entitled, under the provisions of Item 5 of the will of Caroline H. Lowe, to the excess income as it accrued. If the said four remaindermen had all outlived the life tenant, Emma H. Jackson, no question would have arisen. However, one of the four remaindermen, John G. Lowe, to whom was distributed $54,602.50 in pursuance of the indemnity agreement entered into with the trustee, died prior to the date of the death of the life tenant, Emma H. Jackson, and left two children, Caroline Lowe and John G. Lowe, Jr, minors, surviving. If the trustee was not permitted under the terms of the will to distribute the excess income to the remaindermen during the life of Emma H. Jackson, then the trustee is

entitled to recover from the estate of John G. Lowe, the amount of excess income distributed to him, in which event such excess income, under the provisions of Item 5 of the will of Caroline H. Lowe, would pass to and vest in the children of John G. Lowe.

The cardinal rule for the court to follow is to ascertain the intention of the testatrix and give effect thereto. "While the intention of the testator is to be ascertained, in the first instance, from the language which is used in the will, his intention can not be ascertained from such language alone. The testator used this language in view of the surrounding circumstances, and with reference thereto. * * * For these reasons the court places itself in the position in which testator was when he made the will; and the will is construed in the light of the surrounding facts and circumstances. This includes the extent and condition of the testator's property, the number and identity of his family and other natural objects of his bounty, and the amount of his estate, and his relation to the beneficiaries." Page on Wills (2nd Ed.) Section 810.

In light of the surrounding circumstances, what was the intention of the testatrix in Item 5 of her will? It is very clear that her first concern was for her sister, Emma H. Jackson, and next for such of her children as should survive her sister, and then for any grandchildren, the children of her deceased children. She provided that her residuary estate should be used for the benefit of her sister, and after the death of her sister, should be divided between her children who had survived her sister, or if any of her children had predeceased her sister, then their share should descend to their children, and if any of her children predeceased her sister and died without children, then the share which they would have taken should pass to and vest in the children of the testatrix who survived the sister. It is obvious, therefore, and agreed by counsel, that the children of the testatrix took a contingent remain-

der in "all of the balance of said trust estate remaining in the hands" of the trustee on the date of the death of Emma H. Jackson. The principal question for the court to determine, however, is not whether the remainder is vested or contingent, but whether the excess income is embraced in the use of the words in Item 5 of the will: "All the balance of said trust estate remaining in the hands of my said trustees." In other words did the testatrix intend to include only the corpus of the trust estate, or did she also intend to include the excess income of the trust over and above the necessary expenses of the trust and the payment of $500 annually to Emma H. Jackson?

It is urged, first, that there is an intestacy with respect to the excess income, the contention being that the testatrix failed to expressly provide for the disposition of the excess income. Under a recognized rule of construction, the testatrix ██ in this case is presumed to have intended to dispose of her entire estate, corpus as well as income.

"Under ordinary circumstances a man makes a will to dispose of his entire estate, or, at least, of his estate as it exists at the time he makes his will. If, therefore, a will is susceptible of two constructions, by one of which testator disposes of the whole of his estate, and by the other of which he disposes of a part of his estate only, and dies intestate as to the remainder, the courts will prefer the construction by which the whole of testator's estate is disposed of, if this construction is reasonable and consistent with the general scope and provisions of the will. A construction which results in partial intestacy will not be used unless such intention appears clearly. It is said that the courts will prefer any reasonable construction, or any construction which does not do violence to testator's language, to a construction which results in partial intestacy." Page on Wills (2nd Ed.) Section 815.

In Ohio, our Supreme Court has repeatedly held in favor of the rule of construction that a testator is never presumed to intend to die intestate as to any portion of his estate. In the case of **Collier v Collier's Ex'rs., 3 Oh St 369**, the court on page 374 held:

"It is a settled rule of construction, that a testator is never presumed to intend to die intestate as to any part of his estate to which his intention seems to have been directed; and a court of equity will put such a construction upon equivocal words as to prevent such a result."

In the case of **Davis v Corwine, 25 Oh St 668**, wherein the testator in a residuary clause of his will devised and bequeathed to his wife all of his personal property and real estate for and during her natural life, and then disposed of the remainders in most of the several parcels of real estate, to different persons and gave to the wife the power to dispose of the remainders in all other parcels thereof, but the will was silent as to any further distribution of the personal property or any remainder or reversion therein, the court held that the wife took an absolute ownership, and not a life interest merely, in the personal estate. The court in its opinion, on page 674 say:

"But we think, in the second place, that by the terms of this will the widow took an absolute estate, and not a mere life estate in the personal property, * * * . We are controlled in giving this construction to the will mainly by the fact that the testator assumes to dispose of his entire estate." Again on page 675 the court say: "Another rule applicable to the interpretation of wills is that the testator will not be presumed to have intended to leave any of his estate undisposed of."

Again, in the case of **McKelvey v McKelvey, 43 Oh St 213**, on page 219 the court held: "But a testator is not presumed to die intestate as to any

part of his estate. Collier v Collier, supra."

The case of Foss v State Bank and Trust Co., 343 Ill. 97 (1931) has been cited to support the theory of intestacy. This was a case wherein the testator made provision for the disposition of the surplus income if he died with issue, but made no disposition of the surplus income if he died without issue, and he having died without issue the court held that there was such an apparent omission of any provision in the will covering the situation that the presumption against intestacy could not be indulged in to supply an omission made by the oversight where no language was used to show an intention to dispose of the property, and found that the accumulated income descended as intestate property.

The testatrix in the case at bar intended to dispose of her entire estate. Even in the absence of the presumption that she did not intend to die intestate with respect to any portion of her estate, the court still would be of the opinion, drawn from the provisions of the will itself, that it was her intention to dispose of her entire estate. This is not a case where a portion of the corpus of her estate which existed at the time of her death is undisposed of, but a case which affects only the income of the corpus of the trust estate. The testatrix, in Item 5 of her will, provides that "Upon the death of my said sister, Emma H. Jackson, I hereby will, devise and bequeath **all the balance of said trust estate remaining in the hands of my said trustees** or their successors in said trust, to my children equally, living at the time of the death of my said sister" etc., and in the use of the words "all the balance of said trust estate remaining in the hands of my said trustees", indicates an intention to dispose of the entire trust estate including the income as well as the corpus. The court concludes that the testatrix did not die intestate with respect to the excess income of the trust estate.

Another possible construction contended for, is that there was a gift by implication to the contingent remaindermen living at the time of the accrual of the excess income; and, finally, it is urged that there is an implied direction that the excess income is to accumulate during the life of Emma H. Jackson and at her death such accumulated excess income is to be distributed, together with the corpus, to those entitled thereto.

It is contended that, as the income of the trust amounted to many times the expenses of the trust and the $500 annual payment to Emma H. Jackson, the excess income was intended to be distributed, as it accrued, to the remaindermen. There is no expression in the will to support such a construction. On the contrary, every expression in the will indicates the intention of the testatrix that the remaindermen should not receive any portion of the trust estate until after the death of Emma H. Jackson. The rule of construction which in some instances supports a gift by implication to certain beneficiaries under the will, can not prevail against the clear intent of the testatrix. Any implication which may arise that the testatrix in this case intended the excess income to be distributed as it accrued, to the remaindermen who may be living at the time of the distribution, is built solely upon a supposition. There is a presumption against any intention of the testatrix to make a gift by implication, unless she has used words in the will which support such an intention. The rule is clearly stated in Page on Wills (2nd Ed.) Section 819, as follows:

"The presumption is very strong, however, against his having intended any devise or bequest which he has not set forth in his will. There must be a probability arising from the whole will that testator intended to make the bequest or devise, which he has not set forth expressly, so strong that it can not be supposed that any other intention existed in the mind of the testator."

In the foot-note under this section in Page on Wills, the case of Galloway v Durham, 11S Ky. 544, 111 Am. St. Rep. 300, 81 S. W. 659, is cited as holding that

" 'Necessary implication' means, not natural necessity, but so strong a probability of intention that an intention contrary to that which is imputed to the testator can not be supposed."

In the case at bar, the court finds no expression in the will of the testatrix of such a strong probability of intention to support a gift by implication that a contrary intention can not be supposed. In fact, the testatrix used words in her will from which the court may draw a reasonable and fair intention to include the accumulated excess income in the distribution of the corpus on the date of the death of the life tenant. In support of this construction the court cites Page on Wills (2nd Ed.) Section 813, as follows: "If two constructions are each fairly possible, one of which indicates an absurd or unjust intention, and the other indicates a reasonable and fair intention, the courts will give preference to that construction which indicates a reasonable and fair intention." See also **Godfred v Epple, 100 Oh St 447.**

Did the testatrix use words in her will which are susceptible of a reasonable and fair interpretation and from which the court may deduce its conclusion that the intention of the testrix was to include the accumulated excess income in the division of the corpus, on the death of the life tenant? In Item 5 of her will she establishes the trust by providing that "all the balance of my estate, real personal and mixed" shall be held in trust. The words, "all the balance of my estate" have no particular significance except to provide what portion of her estate should be embraced in the residuary clause and be used in the establishment of the trust, and do not refer to corpus as distinguished from income. In the second paragraph of Item 5, the testatrix provides that the trus-

tees shall take possession of "all of said balance of my estate", and, again, this expression does not refer in any manner to corpus as distinguished from income. In the second paragraph of Item 5 'the testatrix provides that after paying the necessary expenses of said trust the trustees "shall first out of the proceeds of same, give to my sister, Emma H. Jackson, the sum of Five Hundred Dollars ($500.00) per year, for and during her natural life." In the use of the words "first out of the proceeds of same", the testatrix gives unmistakable evidence of her recognition of the fact that the income of the trust would exceed the necessary expenses of the trust and the $500 annual payment to Emma H. Jackson. Here testatrix indicates her intention that the income from the trust estate, after paying the necessary expenses of the trust, should be used first to pay $500 per year to Emma H. Jackson. The record in this case shows that at the time of the execution of the will and during the intervening years up to the death of the testatrix. the income from the stock in the Lowe Brothers Company and the Fourth National Bank stock, was far in excess of the charges on the income of the trust as provided in Item 5. Therefore, the testatrix knew that there would be an excess income accumulated during the life of Emma H. Jackson. The fact that the excess income amounted to more than the testatrix may have contemplated, is not material. It is sufficient in law that she recognized the fact that there would be an excess income. She was not required to foresee the unusual circumstances which arose after her death which caused the excess income to increase many times over the amount of income at the time of her death.

What provision did she make in her will for the disposition of such accumulated excess income? In Item 5 she provides: "On the death of my said sister, Emma H. Jackson, I hereby will, devise and bequeath **all the balance of said trust estate remaining in the hands of my said trustees** or their suc-

cessors in said trust, to my children equally, living at the time of the death of my said sister, Emma H. Jackson." Did the testatrix, in the use of the words "all the balance of said trust estate remaining in the hands of my said trustees", intend that all of the assets of the trust estate, whether such assets be the corpus or the income therefrom, should be distributed to her children, equally, who were living at the time of the death of her sister?

We think so. There is no ▬▬▬▬ ▬ expression in the will repugnant to this construction. This construction accomplishes what the court conceives to be the true intent of the testatrix, towit, that the entire assets "of said trust estate remaining in the hands" of the trustees at the death of Emma H. Jackson should be divided among her children who were then living. Any other construction would do violence to the intention of the testatrix as indicated by the plain provisions of the will. Any other construction would lead to absurd and unreasonable results.

Apparently, this question is one of first impression in this state, as a diligent search discloses no reported case in Ohio touching this proposition. Only a few opinions are reported in other jurisdictions. In the state of Connecticut there is found a line of opinions which indicates the diversity of opinion which prevails on this question. The Connecticut cases stand almost alone in support of the theory that an intestacy resulted or that there was a gift by implication. All the cases hereinafter cited involved the question of the disposition of undisposed-of income of a trust estate. In the case of Bridgeport Trust Co. v Marsh, 87 Atl. 865 (Conn 1913) wherein the testator gave a substantial portion of his estate to a trustee in trust, to pay from the income $500 monthly to his widow for life, and to pay as soon as practicable specified sums to designated beneficiaries, and to pay, on the termination of the trust on the death of the wife, the residue to certain institutions and corporations named. the court held

that after the payment of the specified sums to the designated beneficiaries, the excess income on the residue accumulated and the trustee was not justified in making anticipatory payments to the general beneficiaries participating in the division of the trust estate upon the termination of the trust. It was contended in that case that the general beneficiaries should be permitted to receive the excess income as it accrued. The court in passing upon this phase of the case, on page 869 held:

"We have already in effect intimated that the will furnishes no justification for such a division. We are unable to find authority for it. This income accumulates and attaches itself to the fund which remains intact in the trustee's hands for distribution upon the termination of the trust."

In the case of Shepard v Union & New Haven Trust Co., 138 Atl. 809, 106 Conn. 627 (1927) wherein the record was silent as to the size of the estate or the amount of income at the date of the execution of the will, the court held that it could not infer an intention from the state of the record and that under the will it was not the purpose of the testator to give the remaindermen any of the income except such as the will itself provided should be paid to them through the trustees. The court held that the accumulated income descended as intestate property.

In the case of Belcher v Phelps, 144 Atl. 659, 109 Conn. 7 (1929) wherein the estate was divided into two equal parts, one part being vested and the other part being contingent, the court held that the income from the part which was vested should be distributed among the beneficiaries as it accumulated, and the income from the part which was contingent descended as intestate property. Again in the case of New Haven Bank v Hubinger, 167 Atl. 914, 117 Conn. 417 (1933), it was held:

"Under will disclosing intent that excess income should not accumulate or

accumulation would be contrary to testator's scheme, or where will discloses intent neither way, excess income should be distributed to those entitled as it accrues.

"Right to receive excess income above that required for specified uses will be intestate estate if gift of residue is contingent.

"Excess income over that required for specified uses under will bequeathing remainder of trust fund at termination of trust as 'principal' or 'principal and capital,' which did not provide for possibility of excess of income, became intestate estate."

The court held that if the estate from which the income was derived was vested, the income was distributable as it accrued; and if contingent, it became intestate property. Furthermore, the Hubinger case is clearly distinguishable from the case at bar in that the court rested its conclusion on the fact that the gift in remainder of the trust fund at the termination of the trust was expressed to be of the "principal" or of the "principal and capital." The court in discussing this phase of the case, on page 917 say:

"and, in view of the vident fact that the testator had overlooked the possibility of there being an excess of income beyond that needed for the specified uses, these expressions can hardly be deemed adequate to pass the right to receive that excess. That being so, the only conclusion which we can reach is that the right to that excess became intestate estate, without the necessity of considering whether the provisions for the distribution of the fund at the termination of the trust were contingent gifts or vested at the death of the testator."

In the case at bar, the court finds that the testatrix did not overlook the fact that there would be an excess income, and the gift over in remainder is not a gift of "principal" but of "all the balance of said trust estate remaining in the hands of my said trustees."

The several cases cited from the state of Connecticut are distinguishable from the case at bar by reason of the difference in the language used in the wills under construction. These cases do not furnish the court with a well-settled and acceptable rule of construction which can be applied in the case at bar. This court refuses to follow a rule of construction based solely on whether the remainder is a contingent or a vested interest.

The court wishes to cite a number of opinions decided in other jurisdictions, which do furnish a well-settled and just rule of construction, and which this court finds to be the weight of authority. In the case of Eberley's Appeal, 110 Pa. 95, 1 Atl. 330 (1885) the court held:

"It is not essential that the direction to accumulate should be express. If the estate is disposed of so or in such manner that accumulations, clearly beyond what may be reasonably required to fully and effectually carry out the provisions of the trust, must necessarily exist, it amounts to an implied direction to accumulate."

In the case of Scott v West, 63 Wis. 529 (1885) in which a part of the income was given to the daughters and a part remained undisposed of, the court on page 573 say:

"What is to become of that portion of the net income of the estate which is undisposed of during the lives of the daughters? Must it be allowed to accumulate during their lives, and then upon their death be distributed as a portion of the residue of the estate under the fourth clause of the will? Or must it be distributed during their lives?"

Again on page 574 the court held:

"Not only this, but the distribution of the net income is limited to a small fraction. So small is this fraction that

there is no probability of its ever being wholly absorbed, under the directions given in the will, during the life of either of the daughters. Knowing this, it must have been the purpose of the testator to allow such undisposed of net income to accumulate so long as either of the daughters should live, and thus swell the already large corpus with no other perceivable object than to stimulate in remote and unborn descendants an undue ancestral pride in the name of the giver."

In the case of Hurford v Haines, 9 Atl. 540, 67 Md. 240, (1887) the court on page 244 held:

"There is no principle better settled than that a general residuary bequest of personal property, contingent in terms, carries the intermediate income or interest, and that such income or interest, will be required to accumulate and form part of the residue, for the benefit of the party that may ultimately be entitled to such residue. This is a settled doctrine, upon all the authorities, from the cases of Green v Ekins, 2 Atk. 473, and Trevanion v Vivian, 2 Ves. Sen. 430, down to the present time."

In the case of Brown v Wright, 168 Mass. 506, 47 N. E. 413 (1897) the court held:

"Giving property in trust to carefully manage and invest it necessarily implies that any income is part of the trust fund and if such income is in excess of the sums which the trustee is directed to pay out before the final termination of the trust, such excess of income must necessarily be held in the trust and accumulated until it can be paid out in accordance with the direction of the testator; and it can not be said, therefore, that any part of the income is undevised property."

The diversity of opinion in the state of Connecticut is disclosed by the case of Townsend v Wilson. 59 Atl. 417, 77 Conn. 411 (1904), in which the testa-

tor devised all his estate in trust to his executors and provided that "one-half of the net annual income" should be paid to a cousin, and, also, provided that a "sum not exceeding Five Hundred ($500) Dollars annually" should be paid for the support of an uncle, and upon the death of the cousin and the uncle, "said trust shall cease, and the trust estate shall belong" to each of the two executors "one-third of said estate" and to the children of a sister "one-third of said estate." The court held:

"Any balance of the net annual income remaining unexpended after the payment of one-half thereof to the cousin, and the support of the uncle, as called for by the will (did not belong to the executors individually, but) became a part of the trust fund to be divided as such."

In the case of Perry v Brown, 83 Atl. 8, 34 R. I. 203 (1912), wherein the testatrix provided in her will "the balance and rest, of all my property, real and personal, I give to my dear husband, * * * for his personal use, during his natural life," and then provided "his own income is first to be used for his support, and expenses, and after that the income I leave is for his use, outside of what I have bequeathed to a few persons," and provided further that all income exceeding what was necessary for repairs and taxes should be credited to her estate, but to be used freely for the benefit of her husband whenever his own income did not prove sufficient, the court held that "while there was no express direction that the surplus income of testatrix's estate should be accumulated, the words used indicated such an intention." The court on page 16 held:

"The law is summarized in 22 Am. & Eng. Ency. of Law (2nd Ed.) 728: 'In any case where it is made the duty of the trustee to treat as principal the income of the trust property, instead of distributing it in the ordinary course, there is an accumulation. * * * .

"But no such express direction is necessary. If a part oi the income of a trust estate is undisposed of, the trustees should, even in the absence of any provision whatsoever. accumulate it and pay it to the legatees entitled to the original corpus ^t the estate.

"In 22nd Am. & Eng. Ency. of Law (2nd Ed.) 729, it is said: 'A direction to accumulate need ·not be express; it may be implied from the terms of a will or deed, as where the instrument disposes of an estate in such a manner that an excess above what is reasonably necessary to carry out the trust necessarily accumulates.' "

In the case of Bye v Strasbourg, 140 Atl. 273 (N. J. 1928), where the testator gave all his property to executors in trust, providing that seventy per cent of income therefrom be paid to named cestui que trust, after whose death or marriage his estate was to go to named cousins, the remaining thirty per cent of income from trust was held not to be intestate property, but became part of the corpus of the estate and distributable among the named beneficiaries upon the termination of the trust. The court in its opinion held:

"The testator's purpose, as indicated in his will, was that his whole estate should go to the named legatees at the termination of the trust, except that which was to be held by the trustees for the benefit of Mrs. Strasbourg; and that this thirty per cent should be retained by the executors until the time for distribution of the corpus should arrive, and then distributed with the rest of the corpus among the legatees named by him in his will."

The case of American Surety· & Trust Co. v Blair, 70 Fed. (2nd) 774, (1934), which was decided by the Court. of Appeals of the District of Columbia, was one in which testator devised to trustees the residuary estate, and directed that his widow should receive the net income up to $40,000 per year during the term of her life, and all·income above $40,000 was to be credited to the corpus until the trust estate should amount to $1,000,000, after which the net income in excess of $40,000 per year directed to be paid to the widow should be paid to a brother and sisters who were alive at that time. At the death of his widow, the trust was to terminate and the estate was to be distributed share and share alike to the brother and sisters who were alive at that time. The brother and sisters died before the death of the widow. One sister left issue who claimed the excess income from the date of the death of the last survivor, until distribution. The court held:

"From the decease of last survivor until the final distribution of the estate, the will makes no provision for the payment of the excess income. In such circumstances, the intention of the testator that the income in excess of $40,000 per year should be permitted to accumulate during the life of the trust, that is, until final distribution, will be implied. Townsend v Wilson, 77 Conn. 411, 59 A. 417; Perry v Brown, 34 R. I. 203, 83 A. 8; Eberly's Appeal, 110 Pa. 95, 1 A. 330; Hurford v Haines, 67 Md. 244, 9 A. 540. It is part of the trust estate and not subject to distribution until 'the trust shall cease and determine.' "

In spendthrift trusts· it is uniformly held that the excess income will be held to accumulate with the principal fund and will be distributed to those entitled to the principal fund at the termination of the trust. The citation of only a few cases in support of this rule of construction will suffice. In the case of Thurber v Thurber, 112 Atl. 209 (R. I. 1921) the court held:

"Where testatrix created trust for son's benefit, directed trustees to use income or as much as was necessary for the son's support . during his lifetime, and provided that on son's death the trust fund should be distributed to named legatees, the accumulation of unexpended income remaining in ·trustees' hands on son's death did not pass

to son's heirs, or descend to heirs at law of testatrix, but is to be distributed together with the corpus of the trust fund to named legatees."

In the case of Commerce Union Trust Co. v Thorner, 151 S. E. 263, 198 N. C. 241, (1930) the testator created a trust for life for the benefit of his wife or in any event for ten years, and the wife died before the end of the ten-year period, the will made no provision for the disposition of the income during the rest of the ten-year period. The court held that the trustee should hold the income until the termination of the trust and then distribute such income to the individuals entitled to the principal under the will.

In the case of Bridgeport-City Trust Co. v Beach, 174 Atl. 308 (Conn. 1934) the court held:

"Under will creating spendthrift trust and providing that trustee should pay to beneficiary so much of income, as was necessary for beneficiary's support and maintenance withheld income held required to be accumulated with principal fund."

It is true that the case at bar does not involve a spendthrift trust, but the situation resulting from a failure to expressly dispose of excess income by will is the same in both cases. They furnish such a close analogy that we can offer no valid reason why the theory underlying the rule of construction in spendthrift trusts may not be effectually applied to a situation such as is presented in the case at bar.

After giving consideration to the three possible constructions of her will, and investigating the opinions of the courts of various jurisdictions, this court conceives the following rule of construction to be the most reasonable and most in harmony with the true intention of the testatrix: unless a contrary intention appears in the will, where property is given in trust to manage, control and invest, it is necessarily implied that any income derived from the trust estate is a part of

the trust fund, and if such income is in excess of the sums which the trustee is directed to pay out before the final termination of the trust, there is an implied direction that such excess income is to be held in the trust and accumulate until it can be paid out in accordance with the directions of the testatrix, at the termination of the trust.

Applying this rule to the will under construction, the court finds that there is no expression in the will of the testatrix showing a contrary intention to an implied direction that any excess income derived from the trust estate should accumulate during the life of Emma H. Jackson, and at her death should be distributed to the children of the testatrix equally, who were living at the time of the death of Emma H. Jackson. To be more specific, the testatrix in providing in Item 5 of her will that "All the balance of said trust estate remaining in the hands of my said trustees," gave implied direction to the trustees to allow the excess income to accumulate until the termination of the trust, at which time the accumulated excess income should be distributed to those entitled under the will to the distribution of the corpus.

The court finds that the trustee herein made improper distribution of the excess income to the remaindermen in pursuance of the indemnity agreement entered into between the trustee and the remaindermen, and that the estate of John G. Lowe is required to pay to the trustee the total amount so distributed to him, in order that a proper distribution may be made under the terms of the will of the testatrix. Inasmuch as the other children to whom a distribution was made are still living, the court will not order a repayment to the trustee, but will require the necessary releases and vouchers to be filed, in order to comply with the provisions of the will, as of the date of the settlement to be made by the trustee with the remaindermen.

Counsel will draw the proper entry.