Strafford, June 30, 1903.

### DEMERITT & a., Trustees, v. YOUNG & a.

Obscure and doubtful language in a will is to be so construed as to carry out the testator's general purpose, although standing alone it may be susceptible of a different meaning.

Where a will directs the expenditure of so much of the income of a trust fund as "may be actually necessary for the comfort and support" of a son of the testator, the trustees cannot give him the immediate benefit of the income, or pay it to him except as his necessities and comfort demand; and whatever is not required for this purpose and for expenses of the trust must, upon the decease of the beneficiary, be paid to the remaindermen as part of the principal of the estate.

BILL IN EQUITY, for the construction of the will of Emerson Furber. Facts agreed. Transferred from the February term, 1903, of the superior court by *Young,* J.

The plaintiffs are the trustees named in the will, who now hold the estate in that capacity. Mary Furber, the widow of the testator, died in November, 1901, and Ann Leighton, his daughter, died in March, 1901. Frank, his son, is now living, but is, and has been since a time long before the testator's death, *non compos mentis.* His mental incapacity is permanent and incurable, and was known by the testator to be so when he made his will. The defendant Leighton, at the death of the testator, was the sole survivor of his nephews and nieces. The will provides as follows:

"Second. . I give, bequeath, and devise unto my beloved wife, for and during only the term of her natural life, the one third part of all my estate, both personal and real, wherever found or however situated; at the decease of my beloved wife, the aforesaid estate is hereby bequeathed and devised to Joseph L. Demeritt and Eli Meader, in trust for the support and all necessary expenses, in sickness and health, at all times and under all circumstances, for the welfare and comfort of my two children, Ann Leighton

and Frank Furber, during their natural life; at the decease of the aforesaid children, Ann Leighton and Frank Furber, the aforesaid estate remaining in the hands of the trustees to be equally divided between the nieces of and nephews of Mary Furber.

"Third. I give, devise, and bequeath all the rest and residue and remainder of my estate, real, personal, or mixed, of every name, nature, and description, wherever found and wherever situated, to Joseph L. Demeritt of Farmington and Eli Meader of Rochester, and their successors, in trust for the following purposes: To carry on, manage, and improve all my said estate to the best advantage, and take care of my personal estate, and invest the proceed of all my said estate, with power to sell at private or public sale a part or all of my real estate, whenever the best judgment of the trustee it is most expedient and for the interest of my estate so to do, make the money so received from such sale or sales a part of said investment.

"Fourth. To pay out of and from the net income, to my daughter, Ann Leighton, all the money said Ann Leighton, to make good and ample provisions in sickness and health, care, comfort, or support at any boarding place said Ann Leighton may elect, and two hundred dollars per annum in cash, if she so elects, or any part thereof.

"Fifth. To pay out of and from said net income of my estate to my son, Frank Furber, during his natural life, all the money that may be actually necessary for his comfort and support in sickness or health, at such times and such places as may be expedient, under all circumstances, relative to justice; look after said Frank, with a diligent exercise of your best powers relative to good care and no *abuse*.

"Sixth. In case of the death of either of my children, Frank Furber or Ann Leighton, the interest of the one deceased, the interest of the one who survives the other. The longest liver takes all.

"Seventh. Should Mary Furber survive Ann Leighton or Frank Furber, either or both of them, the estate of the deceased shall be the estate of Mary Furber during her natural life, and no longer, and then to be equally divided between the nieces and nephews of Emerson Furber."

The trustees submit the following questions:

"First. Whether or not the said trustees shall pay to said Frank Furber the whole income of said estate, including the one third part of the income given to said Mary Furber, widow, now deceased; or if not, what disposition shall be made of income not paid to said Frank?

"Second. If the income of said estate is not sufficient for the

support of said Frank Furber, whether or not said trustees may pay for his said support any sum or sums out of the principal of said estate?

"Third. Whether or not, under the seventh section of said will, any portion of the principal of the estate should be at once paid to said William S. Leighton, as only nephew of said Emerson Furber, him surviving; and if so, what portion?

"Fourth. Whether or not at the death of said Frank Furber one third of the residue shall be equally divided between said nieces and nephews of said Mary Furber, and two thirds of said residue be paid to said William S. Leighton, only surviving nephew of Emerson Furber?

"Fifth. Whether or not said William S. Leighton, only surviving nephew of said Emerson Furber, shall at the death of said Frank Furber receive all the remainder of said estate?"

*George E. Cochrane*, for the plaintiffs.

*Arthur G. Whittemore* and *Gardner Greene* (of Connecticut), for the defendants.

WALKER, J. It is apparent that the testator's purpose was (1) to provide for the comfortable support of his widow and children, and (2) to devise the remainder to others more remotely related to him. To carry out the first, and, in his view, the more urgent or important purpose, he arranged for the enjoyment of his estate by his widow and children while they all lived, by giving his widow the use and income of one third of his property and by giving to trustees the remaining two thirds to hold for the support of his children. Desiring that all his property should be devoted to the benefit of his immediate family before it or any part thereof should become the absolute property of the remaindermen, he attempted to create devises to operate (1) if the widow should die first, (2) if one of the children should die first, and (3) if both of the children should die before their mother. Upon her decease before the decease of either of the children, it is clear that the property devised to her would have passed to the trustees to hold for the benefit of the children. In other words, it would have been a devise in addition to what had already been given to them, and the entire estate would have been held by the trustees for their benefit. It is equally clear that, in case the widow survived both of the children, two thirds of the testator's property which he gave to the trustees for the children would have been held for her benefit during her life. His general intention as thus indicated was to withhold all the property from the remaindermen

so long as his widow or either child survived. In accordance with his intention, which the inexact and ungrammatical language of the sixth and seventh clauses of the will does not necessarily contradict, the right which Ann had to the net income of the trust property, upon her decease became the right of the widow; and upon the decease of the widow it passed to Frank, the sole surviving member of the testator's family. Any conflict there may be between the sixth and seventh clauses, when regarded as distinct and independent provisions, disappear when they are read together in the light of the testator's general purpose. "The longest liver" of the children "takes all" the interest the other had in the trust property, unless the widow is living; in which case it goes to her, and ultimately to the last survivor. Ann's right to receive a portion of the income during her life was deemed by the testator to be a right which might exist in favor of another after her decease. It is as though he had said: "I give to my daughter Ann the right to receive the benefit of so much of the income of said two thirds of my property annually as will suitably support her during her life, and upon her decease I give to Frank the right to receive what she would receive if she were living,—in other words, to receive the whole net income if his needs require it,—provided his mother is not then alive. If she is living, I give Ann's said right to her to enjoy during her life, and upon her decease Frank shall enjoy the right until his decease, when the right shall terminate, and said property shall then become the property of my nieces and nephews." It is not probable that the testator intended that that part of the trust property which produced the income used by Ann should be turned over to his nieces and nephews upon the death of his widow after her use of it, but that it should continue trust property until the decease of Frank. The interpretation of his intention above indicated is the only one consistent with his general purpose, and must prevail over the obscure and doubtful language in the will, which standing alone might be susceptible of some other meaning. If by the language of the seventh clause the testator meant that the property producing the children's income, upon the death of both should, after the widow's life estate therein, be divided between his nieces and nephews, an intention that upon the widow's death after the death of one of the children a proportional part of the property should be divided among his collateral relatives while the other child survived would be inconsistent with the provision of the sixth clause that "the longest liver takes all." No reason is apparent why he should desire that the entire trust property should be held for the benefit of a surviving child if the death of the other child occurred

after the death of the widow, and that only a part of it should be so held if the child's decease occurred before that of the widow. In the absence of a reason for such a distinction, and in view of his evident purpose to devote his entire estate in the first instance to the support of the members of his immediate family, it is more probable than otherwise that he intended that all his property should be held in any event for the benefit of the last surviving member of his family; and that after this purpose was fulfilled, the remainder of the one third of his estate given to the widow should become the property of her nephews and nieces, and that the other two thirds held in trust should be divided among his nephews and nieces.

As the trustees, under the second and fifth clauses of the will, are vested with a discretion as to the expenditure of the income for Frank, they cannot give him the immediate benefit of it, or pay it to him, except when his necessities and comfort, as indicated in the will, require it. Whatever is not required for this purpose and for the expenses of the trust, upon his decease must be paid over to the respective remaindermen as a part of the principal.

The question whether, if the income is not sufficient for the support of Frank, any part of the principal may be used for that purpose, is not answered at this time, since it does not appear that the condition of the estate and the needs of Frank make its solution necessary in the due administration of the trust. Application to the court may be made for advice upon this subject whenever there is occasion for it.

*Case discharged.*

All concurred.