A. W. DEWEESE, et, Plaintiffs-Appellees, v. PIQUA MEMORIAL HOSPITAL ASSOC., Defendant-Appellee and M. H. KRUG, et, Defendants-Appellants.

Ohio Appeals, Second District, Miami County.

No. 445.   Decided November 24, 1948.

A. W. DeWeese, Piqua, for plaintiffs-appellees.

J. Cameron Dungan, Troy, for Morton H. Krug, Executor of the Estate of Harry J. Krug, deceased defendant-appellant.

## OPINION

By HORNBECK, J.

Plaintiffs are the trustees under the will of Miles K. Brown, deceased and seek the direction of the court as to the distribution of certain assets of the estate to beneficiaries of life estates and upon the death of Harry J. Krug, the last survivor of the life tenants under the will.

Miles K. Brown left a will and a codicil thereto which was duly probated and under which the trustees are acting. The first paragraph of the second item of the will names plaintiffs as trustees. The second paragraph defines their powers and indicates the purpose of the testator respecting his estate. The third and fourth paragraphs define the trust and the authority of the trustees. The fifth paragraph names the beneficiaries, their interest, states the conditions under which and the proportions in which they shall share in the estate, namely, life interest in "the entire net income of my estate", and directs the trustees as to manner of distribution to the named beneficiaries. This paragraph provided that the net income should be paid to the beneficiaries "in semi-annual installments for and during the natural lives" of each of them.

The sixth paragraph of the item reads,

"Upon the death of all my beneficiaries of my net income, to wit, Mary L. Kerns, Nellie B. Krug and Harry J. Krug, I hereby direct, * * * my said trustees, * * * to transfer the whole of said trust estate, both principal and accrued earnings, to the trustees, * * * of the Memorial Hospital Association of Piqua, Ohio, * + *."

In the codicil, at the end thereof, this language is employed,

"I hereby ratify all remainder of my last will and testament outside of this substitution for the fifth paragraph of Item Second thereof."

The effect of this latter language is to expunge from the will all of the fifth paragraph of the second item thereof, not adopted by reference, and to substitute therefore the provisions of the codicil. In the pertinent part of the codicil it is provided,

"It is my will that the said trustees, * * *, shall pay the net income of my estate in their hands as designated in the fifth paragraph of the second item thereof in the following proportions:"

The testator then names those who shall take the life interests and how it shall pass upon the death of one or more of the life tenants and concludes,

"The intention of said trust is to apply the net income to said beneficiaries herein named (in) equal portions, and to

the survivor or survivors thereof until the last beneficiary will have died."

"The net income herein mentioned shall mean, (after all administration expenses have been paid, and deducting all annual expenses, including taxes, assessments, repairs and flowers for my family mausoleum or necessary repairs thereto and also a reasonable compensation to my trustees as designated in my last will and testament.")

The codicil removed the direction to the trustees to pay the entire net income of the estate to the named beneficiaries "in semi-annual installments," and the time when the net income should be paid to them was not fixed. The trustees in 1924 made application to the Probate Court to reduce their bond which order was made and at the same time the court directed the trustees to make payment of the income due the beneficiaries of the life estate at intervals of six months, or in semi-annual installments.

From the petition it appears that Nellie B. Krug died January 24, 1942, leaving Mary L. Kerns and Harry J. Krug her survivors, and that Mary L. Kerns died March 18, 1943, leaving Harry J. Krug, her sole survivor, and that Harry J. Krug died April 24, 1946. The petition continues,

"Plaintiffs are in doubt as to the right of the distribution to Harry Krug and cannot safely proceed without direction of the court and especially to what is 'Net Income and accrued earnings' as the will states that upon the death of all the aforesaid named parties the trust shall be transferred to the Memorial Hospital Association of Piqua, Ohio, both the principal and accrued earnings in their hands. That a question arises that upon the death of any of these parties during the interim between the semi-annual settlement whether the cestui que trust is entitled to the net income up to the time of the death."

It is the claim of the appellees, trustees of the estate, that upon the death of any beneficiary, his share is restricted to that which was distributed to him on the date of the last distribution at the six month period prior to his death; that upon the death of the last survivor of the beneficiaries, Harry J. Krug, his right to income ceased as of the date of the said last six months distribution of net income prior to his death and that the net income accruing on his share subsequent to the last distribution to him prior to his death should, with the principal of the estate, be transferred to the Memorial

Hospital under the true meaning of paragraph six of item second of the will. It is the further contention of the trustees that the last six months distribution regularly made to the last surviving beneficiary, Harry J. Krug, was all to which his estate was entitled. It is the claim of appellant, the executor of the estate of Harry J. Krug, that the estate of Harry J. Krug should take any net income that had accrued at his death which he would have taken had he lived. The probate court held with the contention of the appellees for two reasons: First, that their claim was supported by the provisions of the will and codicil, and second, that upon the application of the trustees to reduce their bond the court had held that distributions of the net income should be made to the holders of the life interests by the trustees each six months, which order is in the nature of res judicata in this action to construe the will.

The first obligation of the court is to ascertain the meaning of the language employed by the testator in his will. In observing this obligation, every word used by him should be given meaning and application, if possible. When he said that the trustees should pay the "net income" of his estate to the named beneficiaries for their respective lives, he intended that it should harmonize with the further provision for the distribution of the remainder of his estate to the hospital, which he defined as "both principal and accrued earnings."

If a beneficiary is entitled during his lifetime, without qualification, to the income of a testator's estate, he is technically entitled every day that he lives, and as long as he lives, to his share that has accumulated. But for practical purposes distribution must be made at appropriate intervals. Of course, it is within the power of a testator to limit the payment of income to a beneficiary, so that it would not extend beyond that allocable to him at a certain fixed date prior to his death. Here, we have no such limitation in the will and certainly not in the codicil. Without such limitation, unless the language of the will is irreconcilable with full distribution to the beneficiary for the full period of his life, it must be so construed.

The fifth paragraph of the second item of the will as set out in the codicil is definite and creates life estates in the named beneficiaries. Testator says that "the net income of his estate", which he defines, shall be paid to each of them in equal portions "during their natural lives" and that it is his intention to apply "the net income to said beneficiaries herein

named in equal portions, and the survivor or survivors thereof until the last beneficiary will have died."

But it is said, that paragraph six of Item two directed the trustees upon the death of the beneficiaries to transfer the whole of said trust estate "both principal and accrued earnings to the Memorial Hospital Association of Piqua, Ohio,". However, he begins this paragraph with this language, "Upon the death of all of my beneficiaries of my net income,". It is manifest to us and must have been to the testator, who was a business man with extensive holdings, that it would not only be impracticable, but impossible for his trustees to close the administration of his estate and to make distribution to the remainderman, the hospital, immediately upon the death of the last survivor of the life estates and because of this fact, there would be some accrued earnings on the principal when final distribution could be made. It is this added increment to the principal which, in probability, the testator meant when he used the term "accrued earnings". If it be so construed, there is consistency and harmony between the terms "net income" and "accrued earnings" and both may be given full application.

In Re: Watson's Estate, Dwight, et al., v. Dwight, et al. (Court of Appeals, N. Y.) 186 N. E. 787, the court held that a will providing that income for life should be paid to certain named beneficiaries and "upon his or her death to pay over and deliver the principal of the fund with all accumulated income to his or her issue, per stirpes, * * *" required that accumulated income on trust estate due at time of life tenant's death go to his estate and part accruing thereafter should go to remaindermen. Seventh syllabus. The language of Crane, Judge, who wrote the opinion, at page 791 is interesting—

"The reference to 'principal and accumulation' is sort of a 'stock phrase' and means the accumulation to which the remaindermen are entitled according to law."

Page, in his Work on Wills, Vol. 4, page 536, says,

"If the beneficiary dies between the periods for the payment of income, it is now held that in the absence of any provision of the will showing a contrary intent, the income should be apportioned and the part accrued up to his death paid to the estate, provided it is an absolute gift of income and not a gift of support merely."

Citations are made to seven states and England. See particularly Welch v. Apthorp, (Mass.) 27 L. R. A. (N. S.) 449.

In **Boggs, Admr. v. Taylor, 29 Oh St 172,** the estate was not held in trust but a life interest was given to the wife in certain income and the residuum was to be divided at her death among named remaindermen. The Court held that the interest on income which accrued from the funds named in the will during the lifetime of the life tenant subject to named charges, passed absolutely to her estate. In **Lamb v. Lehmann, Trustee, et al., 110 Oh St 59,** the will gave to a trustee, in trust, certain shares of stock in a corporation, with power of sale, and re-investment, and instructions to pay, "the entire net income thereof" to one person for life, with remainder to another. It was held that "all cash or property dividends declared thereon shall be payable to the person holding a life estate, and all stock dividends, so called, shall become a part of the corpus of the estate and be held by the trustees during the life of the life tenant, and be distributed at his death to the remaindermen." First syllabus. Second syllabus—

"All cash or property dividends declared and paid upon stock dividends shall likewise be payable to the owner of the life estate during his life."

We do not have in the pleadings a statement of the present holdings of the trustees. If they are stocks and bonds the income which is properly distributable to the holders of the life estate is well defined by adjudications in Ohio, and if there is any difficulty in making this determination the matter will have to be presented to the Probate Court in proper form because it is not so presented on this appeal.

We have not discussed, all of the several cases cited and commented upon by counsel, principally because we are in no doubt as to the proper construction of this will, upon well recognized legal principles, as to which there is no doubt, and a discussion of more cases would add little to this opinion and prolong it unnecessarily.

The judgment will be reversed in accordance with this opinion and cause will be remanded.

WISEMAN, PJ, MILLER, J, concur.