LLOYD, GDN., ET, PLAINTIFFS, *v.* CAMPBELL, TRUSTEE, ET, DEFENDANTS.

Probate Court, Cuyahoga County.

No. 599032. Decided March 28, 1963.

*Messrs. Gottfried, Ginsberg, Guren & Merritt,* for plaintiffs, Maria Celeste Roseman Lloyd, a minor, and Peter John Lloyd, Guardian.

*Messrs. Merkel, Campbell, Dill & Zetzer,* for defendant, Robert W. Campbell.

*Messrs. Squire, Sanders & Dempsey,* for defendant, Berkshire Music Center, Lennox, Massachusetts.

*Messrs. McAfee, Hanning, Newcomer & Hazlett,* for defendants, Musical Arts Association of Cleveland, and Western Reserve University.

*Mr. Hugh Ross,* for defendant, Western Reserve University.

*Mr. William S. Leizman,* for defendant, Ann B. Lloyd.

*Mr. Mark McElroy,* attorney general, and *Mr. Michael P. O'Brien,* assistant attorney general, for defendant, State of Ohio.

ANDREWS, Chief Referee. This case raises a question about the disposition of unexpended income held by the trustee of a testamentary trust created for the benefit of the testator's daughter. The case also presents questions relating to Section 2107.06, Revised Code, commonly referred to as the Mortmain Statute.

The basic facts, as stipulated or admitted by the pleadings, are as follows.

In 1948 the testator, Charles E. Roseman, Jr., married Ann Braasch (now Mrs. Ann B. Lloyd). One child, Maria Celeste Roseman, was born of this marriage on December 2, 1951. On March 19, 1952, Charles E. Roseman, Jr., executed his last will and testament. On March 26, 1952, he died, leaving as his sole heirs his wife, Ann Braasch Roseman (now Mrs. Ann B. Lloyd) and his daughter Maria.

Mr. Roseman's will was admitted to probate in this court on April 18, 1952, and defendant Robert W. Campbell was appointed executor. Mr. Campbell is also the trustee under the decedent's will.

Testator's widow has married Peter John Lloyd, who, on March 26, 1953, was appointed Maria's guardian of the person by this court, previous to which he had adopted her.

By Item II of his will, the testator gave one-half of his net estate to his wife, "to be hers absolutely and in fee simple," upon condition that she was still his wife at the time of his death, which she was.

I will refer to other items of the will at the appropriate places.

The action is brought by Peter John Lloyd, guardian of Maria, and by Maria, an infant, by her guardian, Peter John Lloyd, plaintiffs, against Robert W. Campbell, trustee under the will of Charles E. Roseman, Jr.; The Musical Arts Association of Cleveland; Western Reserve University; The Berkshire Music Center; the Attorney General of Ohio; and Ann B. Lloyd, formerly Ann B. Roseman.

Plaintiffs seek a declaratory judgment settling questions which have arisen with reference to the construction and legal effect of testamentary trusts created under Mr. Roseman's will. The first two questions are related.

Question one is whether *all* the income of the trust created by Item V of the will must either be paid out and distributed currently to the plaintiff guardian or applied by the trustee for the benefit of Maria, the beneficiary. Question two is whether the trustee may accumulate unexpended income prior to the time when Maria reaches twenty-five.

Plaintiffs ask the court to declare that the trustee is required to distribute annually to the plaintiff guardian all the income of the trust not applied by the trustee for the benefit of Maria. Plaintiffs also ask the court to declare that the trustee has no right to accumulate any income of the trust until Maria reaches twenty-five. Defendant trustee opposes both the requested declarations. The other defendants are not interested in this phase of the controversy.

To save time and space, I will not refer specifically to all the various arguments and authorities contained in the briefs. They have been carefully considered, and many additional authorities have been studied.

By Item V of his will, the testator gave all the rest and

residue of his estate, after previous bequests and devises, to Robert W. Campbell, as trustee.

The following paragraphs of Item V of the will have a bearing on the problems at hand.

Paragraph two:

My trustee shall have the sole right and authority to determine whether monies or things received by this trust are to be treated as capital or income, and to decide whether expenditures connected with the administration of this trust shall be borne by capital or income or otherwise.

Paragraph three:

This trust is created for the benefit of my daughter, Maria Celeste Roseman, and all or part of the income of this trust may, at the discretion of the trustee, be used in such manner as my trustee will decide will best serve the benefit and welfare of my daughter, and in the event of necessity, my trustee shall have the authority to invade the principal of this trust, if, in my trustee's judgment, the invasion of the principal becomes necessary to provide living necessities for my said daughter.

Paragraph five:

When my daughter, Maria Celeste Roseman, attains the age of twenty-five (25) years, one-half (½) of the principal of this trust shall be paid over to her absolutely and in fee simple, and thereafter the income from the remainder of this trust shall be accumulated as an asset of the trust, and shall not be paid over to my said daughter unless payment becomes necessary to provide necessities of living which she is unable to provide with her own principal or income.

Paragraph six:

When my daughter, Maria Celeste Roseman, attains the age of thirty-two (32) years, all of the rest and residue of this trust, both principal and income, shall be paid over to her absolutely and in fee simple, and this trust shall terminate.

Paragraph eight:

In the event my daughter, Maria Celeste Roseman, shall not live to receive all of the benefits provided for her in the foregoing trust, then and in such event I direct that all of the assets of this trust which have not been paid over to my said daughter at the time of her death shall be distributed and paid over to the following beneficiaries:

(a) One-third (1/3) of such assets shall be paid over and made a part of the trust as created in Item IV of this will;

(b) One-third (1/3) shall be paid over to the Musical Arts Association of Cleveland; and

(c) The remaining one-third (1/3) shall be paid over to the general fund of Western Reserve University.

## I *MUST SURPLUS INCOME BE PAID TO THE GUARDIAN ANNUALLY?*

Reverting to the first question, Does the will require that all the income not expended by the trustee be distributed annually to Maria's guardian?

At the outset it is important to note that this action has nothing to do with the question of whether the trustee has exercised his discretion properly or has abused it, for plaintiffs claim that *as a matter of right* any surplus income *must* be paid over currently to Maria's guardian. Moreover, we are not concerned with whether or not adequate support of the minor child by her mother and adopting father (plaintiff guardian) may be taken into consideration by the trustee in exercising his discretion.

It has been said that no will has a brother. See 157 A. L. R., 668, 669 (1945). In other words, precedents are of little or no value in construing a will, for in each case we are attempting from the whole will, plus, in some instances, the surrounding circumstances, to discover the intention of the testator. *Id.* 669, 670; *Orr* v. *Yates*, 209 Ill., 222, 70 N. E., 731 (1904) ; *In re Cameron's Trust*, 127 N. Y. S. (2d), 870 (Surr. Ct., 1954) ; *Perry* v. *Brown*, 34 R. I., 203, 83 Atl., 8 (1912) ; *Harlacker* v. *Clark*, 115 Vt., 261, 56 A. (2d), 468 (1948).

Nevertheless, a study of the authorities can be helpful in extracting some of the general principles relating to a particular will construction problem. Nowhere are the principles pertaining to the present problem more clearly set forth than in the *Restatement*, from which I quote.

Where a trust is created to pay the income to a beneficiary for a designated period, the trustee is under a duty to the beneficiary to pay him at reasonable intervals the net income of the trust property. 1 *Restatement (Second), Trusts*, Sec. 182 (1959).

However, comment *c* under that section provides:

To the extent to which the trustee by the terms of the trust has discretion to withhhold the income from the beneficiary, he is not under a duty to pay it to the beneficiary.

The above comment refers the reader to Section 128, comment *d*, which states:

By the terms of the trust it may be provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee is his discretion shall see fit to pay or apply. In such a case it depends upon the manifestation of intention of the settlor to what extent the trustee has discretion to refuse to make such payment or application. If the settlor manifests an intention that the discretion of the trustee shall be uncontrolled, the beneficiary cannot compel the trustee to make any payment to him or application for his benefit, if the trustee does not act dishonestly or arbitrarily or from an improper motive.

See also, 2 Scott, *Trusts*, Sec. 128.3 (2d ed., 1956).

Accordingly, if the will gives all or a fixed part of the net income to the beneficiary, then, obviously, it belongs to him. That was the situation in the following cases cited by plaintiffs. *Phillip* v. *Trainor*, 100 So. (2d), 181 (Fla. App., 1958); *In re Trusts under will of Young*, 243 Iowa, 211, 49 N. W. (2d), 769 (1951); *Huffman* v. *Chasteen*, 307 Ky., 1, 209 S. W. (2d), 705 (1948); *Green* v. *Green*, 182 Md., 571, 35 A. (2d), 238 (1943); *Gasquet* v. *Pollock*, 1 App. Div., 512, 37 N. Y. Supp., 357 (1896), *aff'd on opinion below*, 158 N. Y., 734, 53 N. E., 1125 (1899); *Harris* v. *France*, 33 Tenn. App., 333, 232 S. W. (2d), 64 (1950); *Harlacker* v. *Clark*, 115 Vt., 261, 56 A. (2d), 468 (1948); *Estate of Lindsay*, 260 Wis., 19, 49 N. W. (2d), 736 (1951); *In re Peel* (1936), 1 Ch., 161; *In re Gourju's Will Trusts* (1943), 1 Ch., 24. Among other cases in the same category are: *Orr* v. *Yates*, 209 Ill., 222, 70 N. E., 731 (1904); *Endicott* v. *University of Virginia*, 182 Mass., 156, 65 N. E., 37 (1902); *In re Post's Estate*, 261 N. Y. Supp., 885 (Surr. Ct., 1932).

An excellent example in Ohio is *In re Sedgwick*, 74 Ohio App., 444, 59 N. E. (2d), 616 (1944), where the testator created a trust and gave "the entire net income" to his wife. From time to time the trustees withheld income from the widow, acting

upon their belief that this was in her best interest. The court held that this was improper, and that the widow was entitled to the entire income, quoting Section 182, *Restatement, Trusts.*

*Deweese* v. *Piqua Memorial Hospital,* 85 Ohio App., 310, 82 N. E. (2d), 870 (1948), cited by counsel for plaintiffs, recognizes the rule, although the issue before the court was not the same as the issue under consideration. See also *Earle* v. *Commissioner,* 157 F. (2d), 501 (6th Cir., 1946).

However, the result is different where the trustee is given discretion whether to use all or only part of the income. The distinction is well brought out in *Gasquet* v. *Pollock,* 1 App. Div., 512, 37 N. Y. Supp., 357 (1st Dept., 1896), *aff'd on opinion below,* 158 N. Y., 734, 53 N. E., 1125 (1899), cited *supra,* wherein the court said:

There was no discretion given the trustees to apply to her use a part only of the income, nor as much as her needs required, nor as much as, in the judgment of the trustees, she needed. The whole income was given to the daughter, and she is entitled to have it all.

*Moran* v. *Sutter,* 360 Mo., 304, 228 S. W. (2d), 682 (1950), is a good example of the rule that where such a discretion is given, the beneficiary is not entitled to current surplus income. See also *Demeritt* v. *Young,* 72 N. H., 202, 55 Atl., 1047 (1903); *New York Trust Co.* v. *Black,* 164 N. Y. Supp., 967 (App. Div., 1917); *Perry* v. *Brown,* 34 R. I., 203, 83 Atl., 8 (1912); *Thurber* v. *Thurber,* 43 R. I., 504, 112 Atl., 209 (1921).

The ''discretionary'' rule is adverted to in some Ohio cases, although they are not on all fours with the present case. *McDonald* v. *Evatt,* 145 Ohio St., 457, 62 N. E. (2d), 164 (1945); *Brooks* v. *Raynolds,* 59 Fed., 923, 8 Ohio Fed. Dec., 78 (C. C. A. 6th, 1893); *Morris* v. *Daiker,* 35 Ohio App., 394, 172 N. E., 540 (1929); *Adair* v. *Sharp,* 49 Ohio App., 507, 197 N. E., 399 (1934); *Re Estate of Ternansky,* 76 Ohio Law Abs., 203, 141 N. E. (2d), 189 (App., 1957).

As a matter of fact, counsel for plaintiffs apparently concede that a discretionary trust for the *support* of the beneficiary would authorize the trustee to withhhold income which he decided was not necessary therefor. But counsel argue that the phrase ''benefit and welfare'' is different, and entitles the beneficiary to all the income.

The phrase ''benefit and welfare'' is undoubtedly broader than such a phrase as ''necessary for the support, education, and maintenance,'' but we must look at all the language, not merely the above words. When we do so, we find that although the trust was created for the benefit of the testator's daughter, ''all or part of the income of this trust may, at the discretion of the trustee, be used in such manner as my trustee will decide will best serve the benefit and welfare of my daughter.'' (Item V, paragraph 3, of the will.)

This language certainly gives to the trustee the right to use only a part of the income if he decides that the benefit and welfare of Maria will be best served in that manner. The discretion is his. To hold that at the end of each year he must pay over the unexpended income to the guardian would result in a shifting to the guardian of the discretion which the testator gave to the trustee, and would be completely contrary to the terms of the will. If the testator had wished all the current income to be paid to the child or her guardian, he could have used appropriate language in his will. The same thing is true of current surplus income. Instead, the testator vested the discretion in the trustee to use all or part of the income.

I have carefully examined the language of the trust instrument in each of the cases previously cited, wherein the court held that the income belonged to the beneficiary. In none of them was the trustee given a discretion to apply only a part of the income to the use of the beneficiary. The whole income was given.

It is my conclusion that the trustee is not required to distribute annually to the plaintiff guardian the income of the trust not applied by the trustee for the benefit of Maria.

## II MAY TRUSTEE ACCUMULATE INCOME BEFORE MARIA REACHES TWENTY-FIVE?

As already noted, the second question raised by plaintiffs is whether the trustee, under the terms of the trust, may accumulate any of the income of the trust prior to Maria's attaining the age of twenty-five, and plaintiffs ask the court to answer this in the negative, whereas the trustee contends that he has such a right.

The right to accumulate, according to the trustee's brief, means the right to treat unexpended income as capital and to invest it as such. This accords with Mr. Bogert's definition:

An accumulation is an addition of income to the capital of the trust so that when it is disbursed, it will be paid out as a part of the corpus and not as current revenue. 1A Bogert, *Trusts and Trustees*, Sec. 217, p. 399 (2 ed., 1951).

I will adopt this definition for the purposes of this opinion, though recognizing that the word is sometimes used as meaning the mere withholding of income. See 1 C. J. S., 766 (1936). As a result, my conclusion that plaintiff guardian is not entitled as a matter of right to receive surplus income annually does not necessarily imply that it may be accumulated.

When we look to the will, we find that the fifth paragraph of Item V provides that when Maria attains the age of twenty-five, one-half of the "principal" of the trust shall be paid over to her, "and thereafter the income from the remainder of this trust shall be accumulated as an asset of the trust, and shall not be paid over to my said daughter unless payment becomes necessary to provide necessities of living which she is unable to provide with her own principal or income."

It is clear, therefore, that the concept of accumulation was present in the testator's mind. Why, then, did he omit all mention of it in the third paragraph of Item V, dealing with the disposition of income? The only plausible explanation is that he did not want income to be accumulated until Maria became twenty-five, but, instead, wanted all of it available for Maria's benefit within the discretion of the trustee.

Although I think the testator's intention is clear, it is comforting to note that the *Restatement* takes the position that when a limitation is ambiguous as to whether or not it provides for an accumulation, or is silent as to what shall be done with income, there is a constructional preference for finding that no accumulation has been provided for. 4 *Restatement, Property*, Sec. 440 (1944), and comments *a* and *b*.

It is true that *Gunckel* v. *Gunckel*, 15 Ohio Opinions, 297, 29 Ohio Law Abs., 597 (Prob. Ct., 1939), points in the opposite direction insofar as the "constructional preference" is concerned, but the court is careful to add the proviso "unless a

contrary intention appears in the will.'' Moreover, the will in *Gunckel* was markedly different from the Roseman will, in that it provided for a *fixed annuity* of five hundred dollars a year for the life beneficiary, and there was also language indicating that the excess income should be accumulated. See also the cases cited in *Gunckel*. In any event, we are not bound by *Gunckel*, and I prefer the ''constructional preference'' of the *Restatement*.

There is another indication that the testator did not want an accumulation before Maria reaches twenty-five. The third paragraph of Item V contains an invasion of principal clause in the following language:

* * * and in the event of *necessity*, my trustee shall have the authority to invade the principal of this trust, if, in my trustee's judgment, the invasion of the principal *becomes necessary to provide living necessities* for my said daughter. (Emphasis added.)

This means that when once income is transferred to principal, it can no longer be used for the benefit and welfare of Maria, but only for necessities. It is a well-known fact that as a child grows older, more money will probably be needed to give her the advantages which she should have. This is especially true where the income is to be used for her benefit and welfare, which, as already pointed out, is a broader term than support, maintenance, and education. Were we to interpret the will as contemplating an accumulation of income before Maria reaches twenty-five, we would be limiting the amount to be expended for her benefit and welfare in any given year to the income for that year. There is nothing in the general scheme of Item V nor in the language of the third paragraph thereof justifying any such restriction on the expenditures for her benefit and welfare. Exerything points to the conclusion that the testator did not want surplus income to be absorbed into principal, so that it could no longer be used for his daughter's benefit and welfare.

The trustee also places reliance upon the second paragraph of Item V, which provides:

My trustee shall have the sole right and authority to determine whether monies or things received by this trust are to be

treated as capital or income, and to decide whether expenditures connected with the administration of this trust shall be borne by capital or income or otherwise.

I do not see how this provision helps the trustee. It has nothing whatever to do with accumulation. As plaintiffs observe at page 11 of their reply brief:

\* \* \* The language which testator did use in giving the trustee discretion to determine receipts that are income and receipts that are capital is no more than a power to let the trustee allocate receipts which are not clearly capital or income.

And see Bogert, *Trusts and Trustees*, Sec. 816 (2d ed., 1962). Such a right clearly does not carry with it an authority to *transfer* income to capital.

I hold that the trustee has no authority to accumulate income until after Maria reaches twenty-five.

### III DISPOSITION OF SURPLUS INCOME

Inasmuch as the guardian is not entitled currently to the surplus income and the trustee cannot accumulate it, what happens to it? The answer is plain. The trustee must retain it for possible future use for Maria's benefit and welfare. This does not mean that he may not invest it. It means simply that the income account must be kept separately from the principal account, and that the income account should have sufficient liquidity so that it can be tapped when desirable. The trustee's proper discretion is not interfered with. He is merely prohibited from transferring income to principal. And, of course, this is retroactive, so that from the beginning of the trust he must show separate accounts for income and principal.

We are, then, faced with the problem of the eventual disposition of unused income and its avails. My conclusion is that whatever unused income and its avails there may be, must be turned over to Maria when she reaches twenty-five. After that time the trustee has no further duty to use subsequent income for Maria's benefit, but is required to accumulate it. And certainly testator did not intend to make Maria wait for previously withheld income until she reaches thirty-two. That would put her in a worse position than would occur from accumulating the income, for even if it were accumulated, she would receive half of it, as part of the principal, at twenty-five. See the fifth

paragraph of Item V of the will, previously quoted. Taken in conjunction with the other applicable paragraphs, there is nothing in paragraph six of Item V to justify a contrary conclusion.

The disposition of unexpended income in the manner directed by this opinion is nothing new or startling. See, for example, *Burt* v. *Gill*, 89 Md., 145, 42 Atl., 968 (1899); *In re Egbert's Will*, 257 App. Div., 484, 14 N. Y. S. (2d), 53 (3d Dept., 1939), *aff'd memo*, 282 N. Y., 615, 25 N. E. (2d), 393 (1940) (in which the reader must be careful to separate the point regarding illegality of accumulations from the point at issue); *Rhode Island Hospital Trust Co.* v. *Noyes*, 26 R. I., 323, 58 Atl., 999 (1904).

As has been observed, no will has a brother, but the point is that in those cases, as in this one, the court held against accumulation, with the result that there was unexpended income not used currently by the trustee, and the issue there, as here, was what to do with it.

IV *THE CHARITABLE TRUST UNDER ITEM IV*

By Item IV of his will, the testator bequeathed $50,000 in trust for the benefit of The Berkshire Music Center, Lennox, Massachusetts. It will be recalled that the testator died within a year of making his will. It is stipulated that the gift for the benefit of The Berkshire Music Center is a gift in trust for "a benevolent, religious, educational, or charitable purpose" within the meaning of Section 2107.06, Revised Code. Inasmuch as the testator left a daughter, the gift is clearly invalid under the statute, and I so hold, in accordance with plaintiffs' prayer. There is a further stipulation that no trust has ever been created pursuant to Item IV, which would indicate that the trustee himself considers the bequest invalid.

In his brief, the trustee contends that a construction of Item IV is not necessary or proper. However, since the gift is *in praesenti* and clearly comes within the statute, I see nothing improper in holding that it is invalid. This will settle any possible dispute on the subject. In their brief, plaintiffs maintain that the executor must be instructed as to whether he should pay the amount of the bequest to establish the trust fund or whether he should pay it over as a lapsed legacy to other proper

distributees. But the executor is not a party to this action, and the estate has been distributed and closed. Presumably the $50,000 in question was treated as part of the residue and turned over to the trustee under the provisions of Item V. This was the disposition requested by the plaintiffs in their petition, when they thought that the Item IV trust had been erroneously established. It is the correct disposition. If a gift in violation of the type of statute in question is not in the residuary clause, it passes under a general residuary clause if there is one. 1 Bowe-Parker: Page on *Wills*, Sec. 3.16, p. 110 (1960); *Davis* v. *Davis*, 62 Ohio St., 411, 57 N. E., 317 (1900) (recognizing rule, but making exception to it by reason of particular wording of will); *Deeds* v. *Deeds*, 58 Ohio Law Abs., 129, 42 Ohio Opinions, 384, 94 N. E. (2d), 232 (Prob. Ct., 1950) (tacitly recognizing rule, but making exception where residuary clause does not benefit the "protected" person).

I hold, therefore, that the trust provided for under Item IV of the will is invalid by reason of Section 2107.06, Revised Code, and that the property which is the subject thereof, i. e., $50,000, becomes part of the residuary trust estate created by Item V of the will.

## V  THE CHARITABLE BEQUESTS UNDER ITEM V

We have already quoted the pertinent provisions of Item V. It will be recalled that the third and fifth paragraphs relate principally to the disposition of income from the trust estate, and that the fifth and sixth paragraphs concern the paying over of trust property to Maria.

The eighth paragraph of Item V provides that if Maria shall not live to receive all of the benefits conferred upon her by the trust, all the trust assets which have not been paid over to her at the time of her death are to be distributed and paid over to three beneficiaries, in equal parts. The three beneficiaries are:

(a) The trust created by Item IV for the benefit of The Berkshire Music Center.

(b) The Musical Arts Association of Cleveland.

(c) Western Reserve University.

Plaintiffs, in their fifth prayer, seek a declaration that none of the three institutions named above has any right, title, or in-

536

terest in or to any of the assets of the Roseman estate under his will, or in or to the assets of the trust created under Item V. By their sixth prayer, plaintiffs ask the court to declare that if Maria shall not attain the age of thirty-two, the trust created under Item V shall terminate upon her death, and all remaining assets shall be paid over, free of any trust, one-half to Maria's estate and one-half to the testator's surviving spouse, Ann Braasch Lloyd, or her estate should she then be deceased. Ann Braasch Lloyd seeks the same declaration.

Plaintiffs' position is based upon the proposition that the gifts are invalid by reason of Section 2107.06, Revised Code, the Mortmain Statute, interpreted in *Patton* v. *Patton*, 39 Ohio St., 590 (1883), as applicable to contingent remainders. It is conceded that the bequests are gifts in trust for benevolent, educational, or charitable purposes. For simplicity I will refer to the institutions as the charities.

The charities contend that a determination of the validity or invalidity of the bequests is premature, inasmuch as the remainders are contingent, and no problem concerning them will ever arise unless Maria dies before reaching thirty-two. There is no present controversy, they argue, because they are not claiming any rights to the trust property now, and no rights will accrue unless the contingency occurs. They also maintain that a determination now should be avoided on the ground that it might destroy rights of the contingent beneficiaries which might be valid and enforceable when and if the contingency arises.

In like vein, the trustee argues that inasmuch as he is not presently confronted with any situation regarding the charities, the question of the validity of the gifts to them is moot.

In brief, plaintiffs contend that the issue in question must be determined now in order that Maria's rights may be protected and that the trust assets may not be burdened with the expense of further litigation. On the other hand, the charities predict that further litigation will be necessary anyhow if Maria dies before attaining the age of thirty-two.

Defendant Ann Braasch Lloyd claims that the matter should be decided now in order that her rights may be settled once and for all.

Whether or not the court should decide presently questions based upon future situations which may never arise is within the discretion of the court, although obviously that discretion must not be exercised in an arbitrary manner, but, on the contrary, with a view towards obtaining the most just result.

A few observations from one of the fathers of the Uniform Declaratory Judgments Act, the late Professor Borchard, will help point the way toward an answer.

At page 56 of the second edition (1941) of his book on *Declaratory Judgments*, he discusses in general the following question:

When are the facts sufficiently developed to admit of a conclusive adjudication, and when are they so contingent and uncertain as to justify a refusal to decide?

At page 61 he says that whether the facts are ripe enough for determination is usually a matter confided to the discretion of the court. He notes the following development during the decade immediately preceding the completion of his book.

\* \* \* courts have been less inclined to refuse declarations where they were convinced that the future event was certain or practically certain to occur, and that a useful purpose could be served, whereas theretofore they were disposed to ask for more accrued facts as a condition of adjudication.

Turning more specifically to matters dealing with future interests, including remainders, he makes some important remarks on page 410.

\* \* \* Courts appropriately decline to pass upon the effect of remote contingencies which may never happen.

\* \* \*

On the other hand, not every event which may happen in the future forecloses present interest in its legal effects. \* \* \* If a future event is practically certain to occur, and if it serves a present clarifying and stabilizing purpose to establish its effect (provided all parties in interest are heard), there is no reason why the courts should refuse their aid in adjudicating conflicting claims depending upon the event. Distinction must therefore be made between the effect of events fairly certain to occur and of events remote, speculative, and conjectural.

After a discussion of the development from the "old view" to the more modern, he sums up the matter at page 413.

On the whole, we may say that when the remainder is vested and not contingent, when the parties to be affected by the judgment are *in esse*, of age, and represented before the court, the general rule is to make the declaration.

See also page 702 of Mr. Borchard's book, and 4 Bowe-Parker: Page, *Wills*, Secs. 31.1, 31.2, 31.3 (1961); 4 Pomeroy, *Equity Jurisprudence*, Sec. 1157a (5th ed., 1941); 16 Ohio Jur. (2d), *Declaratory Judgments*, Sec. 14 (1955); Annot., 174 A. L. R., 880 (1948).

Thus, it appears that although a court may, in its discretion, decide questions concerning future interests, it should not ordinarily do so where the problem may never arise due to the fact that it is contingent upon the happening of a future event which may or may not occur. Even then, however, if there is some strong reason for deciding the question presently, the court should not hesitate to do so.

As in so many other situations, a mere listing of authorities is not very helpful because of the ever-present variation in facts and circumstances. The cases cited in the briefs have been studied, as well as many others. Here are some of those upholding Borchard's conclusion that where the issue will not arise unless a certain event occurs, the matter is ordinarily not ripe for decision. *Norton* v. *Moren*, 206 Ky., 415, 267 S. W., 171 (1924); *Huston* v. *Dodge*, 111 Me., 246, 88 Atl., 888 (1913); *Forbringer* v. *Romano*, 10 N. J. Super., 175, 76 A. (2d), 825 (App. Div., 1950); *In re Reid's Estate*, 300 N. Y. Supp., 124 (Surr. Ct., 1937); *In re Rosenberg's Will*, 110 N. Y. S. (2d), 573 (Surr. Ct., 1953); *Kariher's Petition*, 284 Pa., 455, 131 Atl., 265 (1925); *Straus' Estate*, 307 Pa., 454, 161 Atl., 547 (1932). Although some of these cases are in chancery rather than under declaratory judgment statutes, they represent the philosophy of the courts on the question. It is interesting to note that in *Patton* v. *Patton*, 39 Ohio St., 590 (1883), holding contingent bequests void under the Mortmain Statute, the action was not brought until the preceding estate had terminated.

Among the Ohio cases refusing to decide a matter on the ground that a present decision would be premature are *Neville* v. *Carlet*, 16 Ohio Cir. Ct. (N. S.), 544, 36 Ohio Cir. Ct., 469 (Cuyahoga County, 1905) (even though the event was bound

to happen eventually); *Snyder* v. *Heffner*, 33 Ohio App., 379, 169 N. E., 460 (1929). A later case, under the Declaratory Judgments Act, but not dealing with will construction, is valuable for the court's general language. *United States Fidelity and Guaranty Co.* v. *Savoy Grill, Inc.*, 51 Ohio App., 504, 1 N. E. (2d), 946 (1936). At page 509 the court said:

* * * it is the established rule that a declaration will not be made as to future rights in anticipation of an event which may never happen, and in our Declaratory Judgments Law, we find no evidence of an intention on the part of the Legislature to change or modify that rule.

I have omitted some very old Ohio cases.

Plaintiffs stress *Schreiner* v. *Cincinnati Altenheim*, 61 Ohio App., 344, 22 N. E. (2d), 587 (1939), as being a controlling authority that we should decide the question now. It is true that the court stated correctly that there is no rule *requiring* the postponement of an action to construe a will until the time when the trustee is required to act under the provisions of doubtful validity. But in the *Schreiner case,* the court held that it was necessary to decide the matter instanter because a question of inheritance taxation arose, which could not be postponed. Moreover, the executrix brought the action, and it was essential that a decision be made in order that she might know to whom she should distribute the estate.

When we look at the cases where the courts made a present determination of future rights, we find, almost without exception, that there was some commanding reason for doing so or that there was no future contingency upon which the alleged interest depended. *E.g. Morgan* v. *First Nat. Bank*, 84 Ohio App., 345, 84 N. E. (2d), 612 (1948) (vested remainder); *Thomas* v. *Harrison* (Prob. Ct. Cuyahoga County, 1962), unreported, Docket 585, No. 581463; *Willis* v. *Hendey*, 127 Conn., 653, 20 A. (2d), 375 (1941); *New Britain Trust Co.* v. *Stanley*, 128 Conn., 386, 23 A. (2d), 142 (1941); *Katz Investment Co.* v. *Lynch*, 242 Iowa, 640, 47 N. W. (2d), 800 (1951); *Brown* v. *Trustees* of M. E. Church, 181 Md., 80, 28 A. (2d), 582 (1942); *In re Mayer's Estate*, 73 N. Y. S. (2d), 715 (Surr. Ct., 1947).

*In re Slattery's Estate*, 230 N. Y. Supp., 267 (Surr. Ct., 1928), brings out the distinction neatly in the following language:

Under certain circumstances, postponement of construction is justified, particularly where the question before the court is an abstract or academic one, or where, by conditions or contingencies in the will, a present determination in advance of the ultimate vesting would be mere speculation. * * * But in all of these cases the underlying reason for postponement was the contingent nature of the future interest or remainder. In the present estate the remainder vested absolutely at the death of the testator in the New York Public Library.

In the present case, the issue of the validity of the bequests to charity may never arise. Moreover, parties yet unborn may be the ones to inherit if Maria dies before thirty-two and the question then becomes ripe for decision. They are the ones to decide whether or not to contest the validity of the bequests.

Furthermore, it is entirely possible that the Mortmain Statute may be repealed or amended. If that is done, difficult questions of interpretation and constitutional law could arise concerning the effect of a repeal or amendment upon contingent remainders to charities in wills of persons who died before the effective date of the repeal or amendment. Upon the ground of res judicata, a decision now might actually cause injustice to people whose rights would depend upon the legislative action.

The reasons for not deciding the point outweigh the arguments by counsel for plaintiffs and for defendant Ann B. Lloyd. In this connection it is necessary to refer back to my ruling on the relevancy of Stipulation 15. The relevancy question was briefed by counsel for the plaintiffs and for the trustee, and I ruled that the stipulation and Exhibit B, incorporated therein, contained no evidence relevant to the case, and that they be excluded from the stipulation of facts. To this ruling, counsel for plaintiffs excepted and still except. There is no need of rehashing the details of the matter.

In their brief, plaintiffs come perilously close to arguing on the excluded matter when they urge a present decision on the ground that the trustee has asserted that in administering the trust, he must take into account the contingent interests of the charities. However, as pointed out in my ruling on the relevancy of Stipulation 15, the trustee was referring only to the question of whether or not he could accumulate unused in-

come. By reason of my decision that he may not accumulate, but must keep a separate account of unused income, and that unused income must be kept available for Maria's benefit and welfare, and eventually paid over to her, the difficulty apprehended by plaintiffs' counsel appears to have been removed anyhow.

Plaintiffs also argue that since the trustee has discretion to invade the principal for the minor's benefit, we should decide the validity of the charitable remainders now, because the trustee might be influenced in his discretion to invade or not to invade by the existence of charitable remainders of undetermined validity. It will be recalled that under the third paragraph of Item V of the will, the trustee has authority to invade the principal "in the event of necessity," and if, in his judgment, the invasion "becomes necessary to provide living necessities for my said daughter." This is a much narrower provision than the "benefit and welfare" provision relating to income, and it seems farfetched to believe that the trustee would be influenced in determining what are "living necessities" by the presence of possible contingent beneficiaries. Certainly, he should not be so influenced. If, in the future, he abuses his discretion in connection with the invasion of principal, his action is subject to correction by the court. The necessity for deciding now the validity of the charitable bequests in order to avoid that possibility seems far outweighed by the cogent reasons against a present decision.

Moreover, at page 8 of his brief, the trustee makes the following statement:

* * * It is a fact that the bequests to charities contained in Item V of the Will are now null and void * * *

This concession should lay at rest the fears expressed by counsel for plaintiffs.

Plaintiffs also argue that the question should be decided now in order to save the expense of future litigation which would serve no useful purpose. This argument is answered by what has already been said in this opinion, and my previous remarks likewise answer the general contention of plaintiffs and defendant Ann B. Lloyd that their rights should be determined now. While I would have no objection to deciding future rights under

proper circumstances, it seems to me that the possibility of changes in the law, already referred to, plus the resultant problems which might arise, including the res judicata hurdle, make it unwise to decide at this time whether or not the charitable bequests are valid, and I decline to do so.

## VI *REMOVAL OF GUARDIAN*

It has come to my attention that during the preparation of this opinion, Judge Frank J. Merrick, presiding judge of this court, has sustained a motion to remove Peter John Lloyd as guardian of Maria by reason of the fact that he and Maria and her mother have moved away from the United States. The removal of the guardian has no effect upon this opinion or my conclusions. Presumably, a new guardian will be appointed promptly and will be substituted as plaintiff.

### Conclusions of Law

1. The trustee is not required to distribute annually to the plaintiff guardian the income of the trust not applied by the trustee for the benefit of Maria Celeste Roseman Lloyd. In other words, the trustee is *not* required to pay surplus or unexpended income to the guardian annually.

2. Considering the phrase "accumulation of income" as meaning an addition of income to principal so that the accumulated income becomes a part of principal, the trustee has no authority to accumulate income until after Maria Celeste Roseman Lloyd has reached the age of twenty-five years.

3. Any income withheld by the trustee and not used for the benefit of Maria Celeste Roseman Lloyd must be accounted for by the trustee separately from the principal; and the income, plus the avails thereof due to deposit or investment, or otherwise, shall be available for use for the benefit and welfare of Maria Celeste Roseman Lloyd at the discretion of the trustee. This separate accounting of income and principal shall be retroactive to the date of the beginning of the trust.

4. All surplus or unexpended income not used for or on behalf of Maria Celeste Roseman Lloyd, together with the avails thereof, shall be paid to her when she reaches the age of twenty-five.

5. The bequest in Item IV of the will in trust for The Berkshire Music Center, Lennox, Massachusetts, is invalid, and the

property represented thereby, namely, $50,000, becomes part of the residuary trust created by Item V.

6. The question of the validity or invalidity of the contingent bequests to the charities in Item V of the will is premature and will not now be decided.

7. Plaintiffs are hereby awarded from the trust assets the costs and attorney fees incurred in the prosecution of this action.

*Supplemental Conclusion of Law*
April 1, 1963.

8. Maria Celeste Roseman Lloyd has a vested interest in all surplus or unexpended income not used for her or on her behalf, and in case of her death before the age of twenty-five, such surplus or unexpended income, together with the avails thereof, shall become a part of her estate.